BERNARD *v.* FEE'S ESTATE.

1. CHECKS—EVIDENCE.
   The giving of a check is not, of itself, evidence of a loan, but of the payment of a debt.

2. SAME—ESTATES OF DECEDENTS—CLAIMS.
   A check given by claimant to decedent, and indorsed by the latter, five years before his death, does not import a debt by the latter to the former, each having books of account, in which no record thereof appears, and the business of each being shown to have been in a flourishing condition at the time, though a brother of deceased testifies that he and deceased occasionally made loans to each other in small amounts.

Error to Wayne; Frazer, J.   Submitted January 9, 1902.   Decided February 11, 1902.

Belle Bernard presented a claim against the estate of Edward Fee, deceased, for money loaned.   The claim was

disallowed by the commissioners, and claimant appealed. From a judgment for claimant, defendant brings error. Reversed.

*Flowers & Moloney,* for appellant.

*Edward McNamara,* for appellee.

The sole written evidence of the claim presented against the estate of Edward Fee, deceased, is a check reading as follows:

"$300.                          DETROIT, Feb. 11, '95.

"STATE SAVINGS BANK: Pay to Edward Fee, or bearer, three hundred dollars on presenting my deposit book No. 16,881.

"BELLE BERNARD."

On the back is written:

"I guarantee sig. of Belle Bernard.

"B. F. HAXTON."

Also: "EDWARD FEE."

Claimant was a dressmaker, and had on deposit in the State Savings Bank in Detroit, at the date of the check, $1,964.56. She testified that she had no occasion to borrow money; that her business was flourishing; that she had all the money she needed; that she paid her debts sometimes in cash and sometimes in check,—always promptly; that she had known the deceased about 14 years before he died; that he died March 26, 1900; that he had been her friend about five years before his death, and occasionally had called on her. Edward Fee's circumstances were at least equally as flourishing. He was manager and a large stockholder of the Banner Cigar Company; had a credit with the company at that date of $9,448.51, and had a salary of $3,000 a year. It was his custom, when he wanted money, to draw it from the Banner Cigar Company, which at that date had a cash balance of $4,000. He had individual bank deposits amounting to $405.44. The bank cashier did not know to whom the check was paid. He testified that he did not pay it to claimant.

Joseph Fee, a brother of the deceased, was called as a witness for claimant, and testified:

"He (my brother) and I had an exchange at the time, but I never knew of him borrowing from strangers. He has borrowed of me several times. My brother and I have exchanged loans of money in different amounts, as all brothers do. I have loaned him a couple of hundred dollars sometimes. I can't say exactly what it was. During our lifetimes together we have exchanged loans. He borrowed $100 of me in 1895,—the year of the strike; and he has borrowed from me at different times $100 and $50 at a time. I remember he borrowed $200, and $250 once,— the time he went into business. But I never heard of him borrowing of any strangers. * * * The loans that were made between ourselves were the same loans that are made between brothers at times. If he wanted $50, and I had it, he got it; and if I wanted $50, and he had it, I got it."

Another brother testified that he knew Edward borrowed money of his brother Joe.

Mr. Haxton was the secretary and treasurer of the Banner Cigar Company. He died soon after Mr. Fee died. If the deceased wanted a small amount, he got it in cash; if he wanted it in large amounts, Mr. Haxton drew a check for it. The indorsement: "I guarantee sig. of Belle Bernard. B. F. HAXTON,"—was written in violet ink, not kept at the State Savings Bank, but similar to that kept in Mr. Haxton's private office. The signature of "Edward Fee" was written in ink similar to that kept at the bank. The evidence further shows that Mr. Fee was a prudent and careful business man. Verdict and judgment for claimant.

*Flowers & Moloney,* for appellant.

*Edward McNamara,* for appellee.

GRANT, J. (*after stating the facts*). The case was left to the jury to determine whether the check was a loan by claimant to Mr. Fee, and they found that it was. The

check, standing by itself, imports a payment, and not a loan. *Downey* v. *Andrus*, 43 Mich. 65, 69 (4 N. W. 628), and authorities there cited. But it is urged that there were circumstances surrounding the transaction indicating that it was a loan, and that the testimony is sufficient to raise a question of fact for the determination of the jury. Here are two persons, each having books of account. After one is dead, a check is produced by the other to prove a loan by the living against the estate of the dead. No record is made upon the books of either party to the transaction. Neither party is shown to be an habitual borrower or lender. The testimony of Joseph Fee that he borrowed small amounts of money from his brother and his brother of him does not make the deceased such an habitual borrower of money as to lead to the presumption that he on one occasion borrowed money of the claimant. Probably there are few men who, in the course of a lifetime, do not occasionally borrow money, especially of a brother. Under the theory of the claimant, all that it is necessary to do in order to turn a check into a loan is to find somebody of whom the deceased during his lifetime borrowed some money. Such a doctrine finds no support either in reason or authority. None of the cases cited by the counsel support it. He cites *Dougherty* v. *Deeney*, 45 Iowa, 443. The suit in that case was brought by the administrator of Patrick Deeney against his son upon a promissory note executed.by the son. The payee of the note was Kerndt & Bro. Kerndt & Bro. had received the money on the note It was conceded that the money paid to Kerndt & Bro. was furnished by the father to the son. The son paid the money to Kerndt & Bro., took the note, and says he put it in his bureau drawer, without cancellation or any indorsement thereon to indicate payment. It was found among his father's papers. The court held that, upon these facts, the jury might reasonably infer that the note had been bought by the deceased, and was not paid by his son. The case of *Stimson* v. *Vroman*, 99 N. Y. 74 (1 N. E. 147), is no stronger.

It is not customary for business persons of ample means, and who keep books, to allow transactions of this kind to rest in parol for more than five years. Claimant testified that she paid her debts sometimes in cash and sometimes by check. If, some day after banking hours, or on some holiday, or when it was not convenient to go to the bank, she wanted some money to pay debts, it would be a very natural proceeding for her to borrow money of Mr. Fee, or some other friend, to pay them, and afterwards give him a check in payment therefor; or to take a check to Mr. Fee, and obtain from him the money on it for the same purpose. In either case, obviously no record of the transaction would be made, for none would be necessary. Such transactions are of daily occurrence. A memorandum slip may be made and put in the cash-till as cash, and when it is paid the slip torn up. The fact that Mr. Fee indorsed the check and drew the money on it is no evidence that it was a loan. He would do precisely the same thing if he received it in payment. The circumstances proven have no tendency to show that this was a loan and to rebut the presumption that it was a payment.

Judgment reversed, and new trial ordered.

HOOKER, C. J., MOORE and MONTGOMERY, JJ., concurred. LONG, J., did not sit.