**ALDEN–ROCHELLE, Inc., et al. v. AMERICAN SOC. OF COMPOSERS, AUTHORS AND PUBLISHERS et al.**

United States District Court
S. D. New York.
Oct. 27, 1948.

---

Weisman, Celler, Quinn, Allan & Spett, of New York City (Milton C. Weisman and Adolph Kaufman, both of New York City, of counsel), for plaintiffs.

Schwartz & Frohlich, of New York City (Robert P. Patterson, Louis D. Frohlich and Ambrose Cram, all of New York City, of counsel), for all defendants except Gustave Schirmer.

Gilbert & Gilbert, of New York City, for defendant Gustave Schirmer.

Hays, St. John, Abramson & Schulman, of New York City (John Schulman, Osmond K. Fraenkel, and William Klein, II, all of New York City, of counsel), for intervenor Milton Ager.

Wattenberg & Wattenberg, of New York City (Sidney Wm. Wattenberg, of New York City, of counsel), for intervenor Chappel & Co. Inc.

Franklin Waldheim, of New York City (Robert J. Rubin and Gunther R. Lessing, both of Los Angeles, Cal., and Kenneth B. Umbreit, of New York City, of counsel), amicus curiae.

LEIBELL, District Judge.

On July 19, 1948 the Court filed findings of fact and conclusions of law together with its opinion in this case. The matter of the settlement of a decree was postponed at the request of ASCAP's attorneys and a hearing date, in the middle of September, was set for a discussion of the form of the decree to be entered   The hearing was postponed to the first week in October   Meanwhile the attorneys for the defendants served a notice of motion to amend certain findings of fact and conclusions of law, and asked that, if the motion to amend Conclusion of Law XXVII was not granted, the defendants be permitted to present evidence directed solely to the scope of the injunctive relief and based on the contractual relationships and business dealings prevalent between composers, authors and publishers.  This opinion presupposes some familiarity with the Court's opinion herein (80 F. Supp. 888) and with the findings and conclusions already filed.

Because ASCAP is an association of composers, authors and publishers, and because the divestiture provisions of Conclusion of Law XXVII subd. (a) might give rise to rival claims of authors and composers on the one hand and of publishers on the other, a representative of the composers, Milton Ager, and a representative of the publishers, Chappel & Co., separately moved for leave to intervene and be heard, solely on the question of the form and scope of the decree.  The applications were granted.

The attorneys for the defendant, Gustave Schirmer, join in the general motion of ASCAP's attorneys and have also moved to amend Finding No. 13, so that it will show that Mr. Schirmer was a director, but not a member of ASCAP.  There is no objection to the motion to amend Finding No. 13 and it is granted.

ASCAP's motion, in which all the defendants join, asks that Findings of Fact Nos. 31, 50, 55 and 73 be amended.  The motion is denied as to Findings Nos. 31, 50

and 55 which are amply supported by the evidence and are necessary in order to present a complete and true picture of AS-CAP's activities and some of their effects. Finding No. 73 will be amended to meet some of the criticism of the defendants.

■ ASCAP's motion also asks that Conclusions of Law Nos. III, XII, XIII, XIV and XXVII(a), (b), (c) and (d) be amended. No objection is made by the defendants to Conclusion XXVII(e). The motion is denied as to Conclusions III, XII, XIII and XIV, and also as to subdivisions (b), (c) and (d) of Conclusion XXVII. An injunctive provision, instead of the divestiture provision, will be substituted in Conclusion XXVII(a).

Conclusions III, XII, XIII, and XIV properly characterize as illegal under the anti-trust laws, ASCAP's Articles of Association, ASCAP's contracts with its members, ASCAP's system of licensing motion picture theatres, the license agreements issued to the theatres by ASCAP, and the manner in which ASCAP's members have used their copyright privileges.

The principal controversy concerns the provisions of Conclusion of Law XXVII which reads in full as follows:

"XXVII. Plaintiffs are entitled to injunctive relief under Title 15 U.S.C. § 26 [15 U.S.C.A. § 26], as follows:

"(a) Directing ASCAP to divest itself with all reasonable speed of all rights of public performance for profit through the exhibition of motion picture films, of musical compositions which have been synchronized with motion picture films, and to assign said performance rights to the owners of the copyright of said musical compositions;

"(b) Restraining ASCAP from obtaining the right of public performance of any musical composition synchronized with motion picture films when such musical composition is performed publicly for profit in conjunction with the exhibition of such motion picture films;

"(c) Restraining ASCAP's members from refusing to grant to motion picture producers the right to publicly perform for profit through the exhibition of motion picture film, all musical compositions which they allow motion picture producers to synchronize with motion picture film;

"(d) Restraining ASCAP's members from licensing, except to motion picture producers, the right of public performance for profit through the exhibition of motion picture films, of musical compositions synchronized with motion picture films;

"(e) Restraining ASCAP and its members from conspiring with motion picture producers for the purpose of including a clause in contracts issued by producers to exhibitors directly or indirectly requiring exhibitors to obtain a license from ASCAP as a condition to the exhibition of the licensed pictures."

All five subdivisions of Conclusion XXVII were designed to strike down the means by which ASCAP and its members, in combination with certain motion picture producers, were able to require the motion picture exhibitor (the theatre owner) to obtain a license from ASCAP in order to exhibit the motion picture. The illegal conspiracy was based upon a splitting of the picture synchronization rights of a musical composition from its picture performing rights, so that the producer would be authorized by the ASCAP member who owned the synchronization rights to use the musical composition on the film, but the picture performing rights would remain in ASCAP. The small performing rights of his musical compositions, which included the picture performing rights, were assigned to ASCAP by the composer member under the terms of his membership in ASCAP. The motion picture producer in his rental contract with the theatre exhibitor inserted a clause which in effect required the exhibitor to obtain the picture performing rights of those musical compositions through a license from ASCAP. The motion picture producing corporation was a party to this scheme because it profited therefrom, through the share of ASCAP's revenues which the producing corporation obtained from the membership of its subsidiary music publishing companies in ASCAP. ASCAP had two general classes of members, the composers and authors of the music and lyrics, and the music publishers. The two groups divided equally the entire net income of ASCAP from all sources. A

composer member, in addition to what he received from the motion picture producer for the synchronization rights of his musical composition, also shared in the one-half of ASCAP's entire net revenues alloted to the composers and authors. [Finding No. 55]

To make it impossible for ASCAP, its members and the motion picture producers to continue with this scheme, which was threatening irreparable harm to the 160 motion picture exhibitors who are plaintiffs in this action, it appeared necessary (1) to prevent the splitting of the picture synchronization rights from the picture performing rights of the musical composition copyright; (2) to require that those rights be under one ownership and control; and (3) to require that when the picture synchronization rights of a musical composition are assigned to a motion picture producer, the picture performing rights be also assigned to the producer. By these means, the basis for the paragraph in the film rental contract, and the need for a license from ASCAP, would be removed.

■ Towards the accomplishment of those objectives, the provisions of subdivisions (b), (c), (d) and (e) of Conclusion of Law XXVII, are essential and are fully justified by the findings of fact and by other conclusions of law in this case. Subdivision (a) of Conclusion of Law XXVII, in its present form, may be subject to criticism, not that it goes beyond what may eventually prove to be necessary to protect plaintiffs, but because it may be difficult to enforce and may lead to some confusion and a great deal of litigation. Instead of requiring ASCAP to divest itself of the picture performing rights of musical compositions and to assign those rights to the owners of the copyright of the musical compositions, the Court will substitute a provision restraining ASCAP from attempting directly or indirectly to enforce the motion picture performing rights of any musical compositions against anyone as long as ASCAP continues as an illegal combination and monopoly, and a provision restraining ASCAP's members, while they continue as members of ASCAP, from attempting either directly or indirectly to enforce against anyone the motion picture performing rights of any musical composition of which they have granted the motion picture synchronization rights to the motion picture producer.

The Court has decided to substitute these injunctive provisions in place of the divestiture provisions of subdivision (a) of Conclusion of Law XXVII for several reasons. There is the probability of disputes and litigation between copyright owners and others who might claim to be entitled to the performing rights, if ASCAP were directed to divest itself of those rights. Prolonged and detailed court supervision might be required to see that such a provision in the decree was properly executed. Finally, there is the doubt that has been cast upon the Court's power in a private suit under the anti-trust laws to direct a divestiture, even though its purpose is to break up an illegal combination and monopoly, such as the association or entity known as ASCAP. As to the last point, the recent case of State of Georgia v. Pennsylvania R. R., 324 U.S. 439, 65 S.Ct. 716, 89 L.Ed. 1051, indicates that the collusive practices of illegal combinations may be effectively enjoined even though the effect of the injunction may be to dissolve the illegal combination or restrict its conduct to lawful channels. In the State of Georgia v. Pennsylvania R. R. case the court held 324 U.S. at page 462, 65 S.Ct. at page 728:

"If the alleged combination is shown to exist, the decree which can be entered will be no idle or futile gesture. * * * It will supply an effective remedy without which there can be only an endless effort to rectify the continuous injury inflicted by the unlawful combination. The threatened injury is clear."

In Bigelow v. RKO Radio Pictures, 162 F.2d 520, at page 524, the Circuit Court of Appeals, Seventh Circuit, said that, "the decree may very properly be used to destroy the conspiracy root, branch, and all its evil fruits * * *." And in Goldman Theatres v. Loew's, Inc., 164 F.2d 1021, the Circuit Court of Appeals, Third Circuit, approved a decree where the scope of the injunction was protested as too broad.

Another reason why the divestiture provision may not be required in the decree in this case, is the fact that there are now

two government suits against ASCAP in this Court, in which the government itself may seek to have ASCAP dissolved as an illegal combination and require ASCAP to divest itself of all the performing rights it has received from its members. Plaintiffs may ask leave to intervene in those suits and seek therein additional and more sweeping remedies, if the government does not do so.

An illegal combination of copyrights and a pooling of the proceeds derived from the licensing of the copyrights through the illegal combination, renders unenforceable the rights granted under the Copyright Act, at least while the illegal combination continues. See Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363; B. B. Chemical Co. v. Ellis, 314 U.S. 495, 62 S.Ct. 406, 86 L.Ed. 367, and United States v. Line Material Co., 333 U.S. 287, at page 310, 68 S.Ct. 550, involving an illegal use or an illegal combination of patent rights; and Interstate Circuit v. United States, 306 U.S. 208, at page 230, 59 S.Ct. 467, 83 L.Ed. 610, and United States v. Paramount Pictures, 334 U.S. 131, at page 158, 68 S.Ct. 915, dealing with an illegal use and combination of copyrights in restraint of trade.

As to the form of the decree in the case at bar, the plaintiffs will proceed to tax their costs and then notice for settlement, on five days' notice, a new form of a proposed decree. It should be clear and concise and adjudicate only the basic questions on which the right to injunctive relief depends. The provisions for injunctive relief should be limited to those set forth in Conclusion of Law XVII; in subdivision (a) thereof as amended, and in subdivisions (b), (c), (d) and (e) as originally filed. Defendants may submit a memorandum on the proposed form of the decree to be entered herein. If the Court wishes to hear counsel further on the form of the decree, they will be so advised.

The Court is filing herewith amended Findings of Fact Nos. 13 and 73, and an amended Conclusion of Law No. XXVII (a).

Since drafting the above opinion, the Court received (only yesterday) a memorandum from Franklin Waldheim, submitted amicus curiae, on behalf of RKO Radio Pictures and the Society of Independent Motion Picture Producers, a California corporation organized as a non-profit membership association. He states that the producers who are members of that Society "are not included among the producers found by the Court to have interests in music publishing members of ASCAP." The following quotations from the memorandum show the "great concern" these producers have in the form of the decree to be entered in this action:

"It is a matter of great concern to motion picture producers that the decree to be entered in this action shall not inadvertently impose an unjust loss upon them. If the provisions of the decree are concerned only with motion pictures to be produced *in the future,* a serious problem will be left unsolved with respect to all motion pictures produced in the past. In this category are included all motion pictures released in prior years (which may be reissued for future exhibition) and pictures, completed or in course of completion, which have not yet been released. With respect to all of these, the vast investments of the producers have already been made. By reason of the monopolistic practices condemned by the Court, the producers have been able to acquire only the synchronization rights to the compositions of ASCAP members which are recorded on the sound tracks. If the decree merely restrains ASCAP and its members from attempting to *license* the performing of the musical compositions in these pictures, the exhibitors will simply remain *unlicensed*—but they will still be unable to exhibit these pictures without being sued for infringement by the copyright owners of the music. Before exhibiting the pictures, the exhibitors will demand that the producers acquire now, from the copyright owners, the performing rights for all these compositions. The producers will then be placed in an obviously impossible bargaining position. They will have motion pictures, representing an aggregate investment of staggering proportions, which cannot be exhibited in theatres unless the producers can come to terms with the various copyright owners. In fixing upon a price for the performing rights, the pro-

ducers would have no bargaining freedom—and ASCAP or its members would fix their own price."

"It seems proper, therefore, that neither ASCAP nor its members should now assert these illegally withheld performing rights when exhibitors show motion pictures embodying music for which synchronization rights have been granted. 'Without the right to perform, the motion picture films are valueless' (Finding of Fact No. 143). ASCAP and its members should be restrained from asking exhibitors for money or suing them for infringement by reason of the exhibition of such films. Attention is respectfully called to the fact that, in substance, Paragraph Tenth of the decree proposed by the plaintiffs embodies such a provision."

■ The provisions of subdivision (a) of Conclusion of Law XXVII as amended should adequately protect these producers as well as the exhibitors, in respect to motion pictures already produced, considering the present status of ASCAP and its members. Since the splitting of the picture performing rights from the picture synchronization rights was an essential element of the conspiracy of ASCAP and its members to illegally restrain interstate trade in motion pictures, it is not likely that any court would lend its process to enable either ASCAP or its members to profit from what they have already done in furtherance of their illegal conspiracy. The inherent evil of the scheme would continue as long as the producer held only the synchronization rights of the musical composition. A member of ASCAP, by resigning therefrom, would not become entitled to collect on his past illegal conduct in splitting the picture performing rights from the picture synchronization rights, because his resignation would not, of itself, cure that evil. Hartford Empire Co. v. United States, 323 U.S. 386, 65 S.Ct. 373, 89 L.Ed. 322, and Standard Oil v. Clark, 2 Cir., 163 F.2d 917, are not to the contrary.

■ In a private suit for injunctive relief the decree may be so fashioned that "it will supply an effective remedy without which there can be only an endless effort to rectify the continuous injury inflicted by the unlawful combination." State of Georgia v. Pennsylvania R., supra. The provisions of subdivision (a) of Conclusion XXVII as amended have been drawn with a scope sufficiently broad to prevent threatened injury, and are based on the conduct of the defendants as developed at the trial. If the rights of the plaintiffs require further protection, an application may be made at the foot of the decree to deal specifically with any inequitable situation that may hereafter develop.