FIRST NATIONAL BANK AT CODY, Cody, Wyoming, and Ruth Clare Yonkee, Trustees, Appellants (Plaintiffs below),

v.

F. Allyn FAY and Mary Ann Fay, Appellees

(Defendants below).

No. 2877.

Supreme Court of Wyoming.

June 23, 1959.

341 Pac.2d 79

248

Ernest J. Goppert of Goppert & Fitzstephens, Cody, for appellants.

Elmer J. Scott, Worland, for appellees.

Before BLUME, C. J., and PARKER and HARNS-BERGER, JJ.

250

OPINION.

Mr. Justice HARNSBERGER delivered the opinion of the court.

On August 4, 1952, Otto Menger, now deceased, became the owner and holder of a $5,000 cashier's check of The Farmers State Bank, Worland, Wyoming. When introduced in evidence this check bore on its reverse side a typewritten notation "Pay to the order of F. Allyn Fay and Maryann Fay, of Worland, Wyo. Loan on Contract Note of even date, Aug. 11th 1952", underneath which appears in ink "O. A. Menger" with a typewritten underscoring and then in ink "F. Allyn Fay & Maryann Fay". One August 12, 1952, this check was deposited to the account of "The Men's Shop F. Allyn Fay". "The Men's Shop" was a trade name used by F. Allyn Fay.

In the probate of Mr. Menger's estate, the following entry appears upon the inventory and appraisement, "F. Allyn Fay—Loan in the sum of $5,000.00". On distribution of the estate of the deceased this inventoried item was decreed in trust to Ruth Clare Yonkee and the First National Bank at Cody, Cody, Wyoming, by virtue of a residuary clause. As the asserted loan was not repaid, the trustees brought this action against the defendants who claimed the $5,000 was a gift to them from the deceased.

Plaintiffs' position seemed to be that the typewriting appearing above the signature of the deceased on the reverse side of the check was sufficient evidence that a loan had been made to defendants and consequently they rested their case after introducing the check and a deposit slip showing the check's proceeds were credited to the account of defendant F. Allyn Fay.

At the conclusion of the trial, the court requested counsel to file briefs. This was done, and within a month thereafter, the trial judge addressed a letter jointly to respective counsel informing them that plain-

tiffs had failed to prove the allegations of their petition; that the record showed "that on August 11, 1952, Otto Menger delivered a cashier's check to the defendants, bearing the endorsement in question"; that it was deposited in the defendant's account; that this was "not sufficient upon which to base a finding for the plaintiffs". The letter also noted that the court had said at the close of the case that it could not find that the transaction constituted a gift, and that the court was unable to say what the transaction was. The letter closed with instruction to defense counsel to prepare a judgment, "saving exceptions to the plaintiffs"

Defense evidence showed the endorsement signatures "F. Allyn Fay & Maryann Fay" were the first writings on the reverse side of the check and that both these names had been written by F. Allyn Fay; that the name "O. A. Menger" was written thereafter and the typing including the underscoring line was imposed after "O. A. Menger" was written.

The judgment recited that plaintiffs had asked for special findings at the beginning of their argument, but set forth that the only findings the court could make were: that plaintiffs had failed to prove their allegations by a preponderance of the evidence and that the court was unable to determine from the evidence what the transaction was between Otto Menger and the defendants. The court then found generally for the defendants and decreed plaintiffs recover nothing from defendants and defendants have their costs for witness fees. This general finding in favor of defendants and against plaintiffs imported a finding that there was insufficient evidence to prove that the $5,000 had been loaned to defendants.

Plaintiffs moved to amend this judgment, claiming the court had orally stated at the close of the argument and before submission of briefs that defendants had received the sum of $5,000 in the form of a cashier's check issued by The Farmers State Bank of Worland, to the deceased, Otto Menger; that defendants had failed to prove that the $5,000 had been paid them as a gift and that the court's letter to counsel was a memorandum opinion making special findings slightly different than those announced at the close of the oral argument. The motion also stated that before judgment was entered, plaintiffs again had verbally requested the court for special findings of fact and conclusions of law to be made in accordance with the court's letter of March 25, 1958, and alleged that thereupon the court advised plaintiffs the judgment would contain the findings as orally announced by the court and as set forth in the letter above referred to, but that notwithstanding this promise the judgment entered omitted such findings.

It was also claimed in this motion that inasmuch as plaintiffs had admitted during the trial that defendants had never made nor executed a contract note dated August 11, 1952, with Otto Menger, as plaintiffs had originally pleaded, they should be permitted to amend their pleadings accordingly. The court denied the motion in its entirety.

In this appeal, plaintiffs say the court committed reversible error (1) in failing to find defendants had received from Menger the sum of $5,000; (2) in failing to find the transaction did not constitute a gift; (3) in failing to find the transaction was an unjust enrichment of defendants; (4) in refusing the amendment of plaintiffs' pleading; (5) in denying plaintiffs' motion

to have the judgment amended; (6) in finding generally for defendants; and (7) in entering the judgment rendered.

There was no error in the court's failure to find defendants had received $5,000 from Menger. Such a finding standing alone would have availed plaintiffs nothing. In order to have benefited plaintiffs, the necessary finding would have been that defendants had received $5,000 from Menger *as a loan*. The effect of the court's finding that there was a failure to prove the allegations of the petition was a holding that the alleged loan had not been made. That was sufficient to adversely dispose of plaintiffs' claim, providing only that the evidence justified such a finding.

Nor was there error in failing to find the transaction did not constitute a gift.

Plaintiffs' action was commenced on the theory there was an express contract evidenced by a promissory note which obligated defendants to repay the $5,000. Upon this theory plaintiffs were required to prove not only that there was such a note but that the same remained unsatisfied. After entry of the judgment containing the finding that plaintiffs had failed to sustain their cause of action, plaintiffs in effect belatedly admitted this was true by filing their motion to amend. This implied they wanted to abandon their note theory and switch to a claim upon an implied contract to repay the money. But their proof was not amplified and remained only that the $5,000 had been paid by Menger to defendants. This was as insufficient to establish an implied contract to repay the money as it was to prove the money had been paid as a loan. In either view, the appellants' position is tantamount to

saying that an unexplained payment by one person to another presupposed that such payment is a loan unless the payee is able to prove to the contrary.

This would indeed be a strange rule of law if we must be put to proof that all moneys coming into our possession were not paid to us as a loan.

In this case we have an admitted failure of plaintiffs to prove defendants made and executed the purported note. There was also a failure of plaintiffs to prove that the money was given as a loan or was paid under circumstances where in equity or good conscience it ought to have been repaid.

This is not a case where the evidence shows defendants had moneys belonging to another which in good conscience, equity and justice they should be called upon to account. The cases cited by appellants, to support their theory that the burden of proof shifted from plaintiffs to defendants because defendants had answered that the money paid them was a gift, fall far short of meeting the facts proven in this case. We do not disagree that if proof shows one holds property of another, and sufficient reason is shown why in good conscience, equity and justice it should be returned, the onus of defending against an action to enforce its return or repayment falls upon him who asserts such a defense. But here, plaintiffs completely failed to show anything except that Menger had paid defendants $5,000. When they proved that, they merely proved the $5,000 belonged to the defendants. To recover the money back it was necessary they prove a reason, valid in law or in equity and justice, why it should be repaid. This they did not do and the court so correctly found.

The burden was upon plaintiffs to establish that the transaction was such that in law or equity they were entitled to repayment of the amount involved. Until sufficient evidence was produced to prove this vital element of plaintiffs' claim, nothing was required of the defendants. They were entitled to sit idly by, taking the position there was nothing which required any defense. However, when the typewritten notation and underscoring presented a circumstance bearing upon the existence of a note which evidenced a loan, it then became incumbent upon defendants to act. This they did by challenging the verity of the typewriting being upon the instrument at the time it was negotiated. To do this the testimony of an expert whose qualifications were admitted by plaintiffs was offered. This evidence showed the chronology of the various writings which appear on the reverse side of the check. In addition, the court itself was privileged to make its own visual examination of the exhibit. Furthermore, defendants produced testimony of two credible witnesses as to statements made by deceased just a few days after the check was cashed which definitely indicated the deceased had lately made a large cash gift to the defendants. Under these circumstances, the finding that plaintiffs' evidence was insufficient to convince the court as to just what the transaction was speaks strongly that the court was either unconvinced that the typewriting was on the check at the time it was presented and paid, or if it was on the check at that time, that this fact of itself did not sufficiently indicate the money was given by deceased to the defendants as a loan. Viewing this finding in a light most favorable to plaintiffs, it can mean no more than that the court did not believe the evidence as a whole warranted the conclusion that the transaction was a loan, even if the notation had been upon the check

when it was cashed. In any event, the finding was justified under the evidence most favorable to the defendants.

In oral argument, appellants' counsel, for the first time, insisted the expert's testimony was discredited upon cross-examination. With this we do not agree. The expert's direct testimony was positive and convincing. He called attention to certain overlappings of the different colors of ink and typewriting imprints, as well as the running of the inks or blotchings, and clearly explained how this signified that one writing or imprint was placed on the document after or before others.

The alleged discrediting cross-examination was as follows:

"Q. And it also can be observed that there is a different colored ink there, the typewriter has one color, and that goes from the printing on down through the line, does it not? A. Yes, sir.

"Q. Looks like that was all put on there at one time by a typewriter? A. Yes, sir.

"Q. And the ink that Mr. Menger used to sign his name with is a dark blue ink, is it not? A. Yes, I called it purple.

"Q. It is either purple or dark blue? A. Yes, sir, I will agree with you.

"Q. It shows very clearly the dark blue clear over this light blue color? A. Yes, sir.

"Q. That Mr. Fay used to sign the document with; it also shows, does it not that that, especially on the G here that that obliterated and covered

that typewritten line entirely, didn't it? A. Not covered completely, but almost, sir.

"Q. You can see there is no line visible from the 'g' to the end of it? A. It could be seen on the enlarged portion over there.

"Q. Inside the loop? A. Yes, sir.

"Q. Inside of the loop of the G? A. Yes, sir.

"Q. That is the only place it could be seen? A. Yes, sir.

"Q. The way you observe, it is covered by this purple blue ink right after the 'm', between the 'm' and the 'e'? A. Yes, sir.

"Q. You observe it is covered between the 't' and 'O'? A. Yes, sir."

A fair summary of what these questions and answers show is that while the exhibit itself may not have as clearly shown which writing was over the other, the enlargement of the exhibit, which was also in evidence, did show these facts.

This cross-examination taken alone is somewhat confusing but it certainly does not contradict the other direct testimony of the witness. The trial court had the best opportunity to gauge the effect of the cross-examination and the true meaning to be gleaned from the whole of the witness' testimony. Therefore, the court's obvious reaction to the evidence will not be disturbed.

Before leaving this subject, we are disposed to add that our own careful examination of the exhibit leaves

no doubt in our minds but that the typewriting was placed on the check after the signatures had been written.

The premise of appellants' claim that defendants will be unjustly enriched if permitted to retain the money assumes that whenever money has been received the recipient is not entitled to retain it unless he is able to affirmatively prove his right to do so. This is entirely unsound and its unwisdom becomes apparent if the same idea is expressed in a somewhat different fashion. For instance, it would mean that whenever a person receives money, he must thereafter be prepared to assume the burden of proving that he should not be legally or equitably called upon to repay it. Envisioning the impossible situations which would arise under such a rule, would cause us to discard any such rash philosphy. That is simply not the law. The burden to prove a right remains upon him who asserts that right. Appellants' quotation from 58 C.J.S. Money Received § 4 p. 913, offered in support of this claim says plainly:

> "* * * All plaintiff need show is that defendant holds money *which in equity and good conscience belongs to him; * * *"* (Emphasis supplied.)

Appellants, however, completely ignore or overlook the applicable balance of the statement which says:

> "* * * but if he fails to show such superior right, that is, that defendant does hold money which so belongs to plaintiff, he cannot recover, * * *."

It was required that plaintiffs prove why or where "in equity and good conscience" the $5,000 received by defendants should be repaid. This case is devoid of any

substantial evidence showing defendants were under duty or obligation to repay the money or that defendants either expressly or impliedly ever promised to repay it. No fact or circumstance appears in the record to indicate in the slightest that in good conscience, equity or justice the money ought to be repaid. With the rule of law that where good conscience, equity or justice demand, a person should not be permitted to be unjustly enriched, for which appellants cite numerous authorities, we heartily agree, but with appellants' attempt to fit the rule to the facts of this case, we disagree. No unjust enrichment has been shown.

We find no error in the court's refusing plaintiffs the right to amend their reply. Appellants say they had that right because during the trial they admitted defendants had not made or executed the note as plaintiffs had pleaded. The record does not show that any such admission was made during the trial. The first reference to any such admission appears in plaintiffs' motion to amend the court's findings and judgment, which was made, of course, after judgment was rendered. However, even had the admission been made during the trial we fail to see how that would have aided plaintiffs. We assume, although neither the appellants' brief nor their arguments make it at all clear, that appellants have some idea that by confessing there was no note, thus repudiating their own pleading in that respect, they should be privileged to depart from their original action upon an express contract and allowed to succeed upon some theory of implied contract. If that was their thinking, plaintiffs would still fail of recovery because, as heretofore pointed out, their evidence failed to show a loan was made to defendants and thus they fell far short of proving there

was an implied promise, or imposed duty, to repay the amount in question to the person to whom the check was originally issued or to his successors in interest.

In any event, if the evidence in this case warranted an amendment, a further answer to plaintiffs' claim that there was reversible error in denying the amendment is found in Rule 15(b) of our Rules of Civil Procedure which says:

> "* * * Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; *but failure so to amend does not affect the result of the trial of these issues.* * * *" (Emphasis supplied.)

We find no merit in the contention that the court erred in denying and overruling plaintiffs' motion to amend findings, make additional findings and to amend the judgment. The basis for this claim seems to be that the findings contained in the judgment do not contain various statements made orally by the court at the close of the arguments but before final submission upon briefs of the parties, and also that the court omitted various statements, contained in the court's letter to the attorneys dated March 25, 1958, which appellants say are "findings". Kardon v. National Gypsum Co., D.C.Pa., 83 F.Supp. 613; Id., D.C., 69 F.Supp. 512; Id., D.C., 73 F.Supp. 798; Alden-Rochelle, Inc. v. American Society of Composers, Authors and Publishers, D.C.N.Y., 80 F.Supp. 900; Id., D.C., 3 F.R.D. 157; Id., D.C., 80 F.Supp. 888, and Wilkins v. Couch, D.C.Okl., 10 F.R.D. 532, cited by appellants in support of this claim of error, are not at all in point on the real question presented, which is

whether the denial of a motion to amend findings is reversible. The Wilkins case, however, is adverse to counsel's theory that the oral statements of the court made at the close of the arguments but before submission of briefs, or the recitals contained in the court's letter to both counsel but before judgment entered, were binding upon the court, for in that case it was held the court did not err in subsequently amending its original fact findings and conclusions of law and rendering judgment accordingly on its own initiative.

Finally, appellants launch a blanket claim of error in finding generally for defendants and entering judgment in favor of defendants and against plaintiffs. We discover nothing new added to what had been previously advanced by appellants in support of the other claims already considered, so it is unnecessary to say anything more about them.

During oral argument, appellants' counsel had much to say about the defendant Fay making false statements to their representative prior to the commencement of this action. The trial court evidently did not feel that these admittedly false statements reflected adversely upon Fay's credibility under all the circumstances present. We are inclined to agree that at the time these statements were made this defendant was not under duty to tell the truth and while it was wrong and unnecessary for him to make untrue statements, his reasons for doing so are at least understandable.

In conclusion, we hold that there was sufficient evidence before the court to justify its findings that plaintiffs had failed to produce the preponderance of evi-

dence necessary to sustain their cause of action. The judgment in favor of defendants and against plaintiffs is, therefore, affirmed.

Affirmed.