483 P.2d 579

Lawrence J. FLEMING, Ancillary Administrator With the Will Annexed of the Estate of Fred P. Brewer, Deceased, Appellant,

v.

John BECKER, individually; Imogene Becker, individually; John Becker and Imogene Becker, his wife, Appellees.

No. 1 CA–CIV 1333.

Court of Appeals of Arizona, Division 1, Department A.

April 8, 1971.

Rehearing Denied May 7, 1971.

Review Denied June 8, 1971.

Filler, Paytas, Shannon, Fleming & Stephenson by Charles A. Filler, Phoenix, for appellant.

George W. Oglesby, Phoenix, for appellees.

DONOFRIO, Judge.

This is an appeal from a judgment in favor of the appellees Beckers who were the defendants in an action for debt brought by the Executor of the Estate of Fred P. Brewer. The complaint alleged a loan to the Beckers from Brewer. Lawrence J. Fleming was substituted Ancillary Adminstrator With the Will Annexed of Brewer's Estate at the request of Mrs. Brewer. The trial was to the court without a jury.

In the Superior Court the appellant sought to recover from the appellees $5,000 plus interest which appellant alleges was loaned by the decedent Brewer to the Beckers on June 2, 1964. The appellees, by their answer, admitted having received the sum from the decedent but by way of defensive pleading, in addition to a general denial, asserted that the $5,000 sum was paid by the decedent to the appellees in settlement of a debt owing to appellees, claimed a Rule 12(b) (6) defense, and

pleaded both the Statute of Frauds and Statute of Limitations.

Briefly, the facts are these. The Beckers and decedent Brewer and his wife met in 1955 while Mr. Becker was serving in the Air Force in California. They became close friends. Becker obtained his release from the Air Force in 1958 after having been asked by Brewer to join with him in a business venture. Under this arrangement Becker was to manage a small resort owned by Brewer and located at Crescent Lake near Klamath Falls, Oregon. It was Becker's understanding that Brewer would further develop the resort. In return for managing the resort Becker and his wife received a salary and lodging. There was also a written agreement between the parties whereby the Beckers received an option to purchase 49% of the resort at a price to be determined on the basis of an impartial appraisal. In 1960 the business relationship was terminated, allegedly due to marital problems the decedent was having with his wife. The option was not exercised and the Beckers moved to Lake Oswego, outside Portland, Oregon. In April 1964 the Beckers visited Brewer at Crescent Lake and at that time Brewer offered to rehire Becker as the manager of the resort. Becker resigned the position in which he was then employed and prepared to move back to Crescent Lake, but two or three days after the offer was made it was withdrawn by Brewer. Unsuccessful thereafter in finding a job in the Portland area, Becker secured employment with a bank in San Francisco and drove there with his daughter, stopping on the way at Crescent Lake. It was at that time, on June 2, 1964, that Becker received the sum of $5,000 from Brewer which was in the form of a personal check drawn upon Brewer's account in the United States National Bank of Portland, Klamath Falls, Oregon. The check is in evidence and is in the usual form. Crescent Creek Cottages and the name and addresss of Brewer is imprinted on the upper left of the face. The check bears the signature of Fred P. Brewer as maker made out to Becker as payee. In the margin at the top of the check appear the handwritten words "Loan J. B. & Imogene Becker". Becker, on cross-examination and in his deposition, was unable to state whether these words were or were not on the check at the time he received it, but he did acknowledge that the notation was in the handwriting of the decedent Brewer. He endorsed the check in blank when it was cashed.

From June 1964 to February 1967 the Beckers lived in California. Since February 1967 they have lived in Phoenix, Arizona, where the suit was brought.

It was Becker's position that the $5000 sum represented an "entitlement" arising from the financial loss Becker sustained as a result of Brewer's having withdrawn his offer of employment; that on those facts the sum received was for a debt owing to Becker.

In response to questioning, Becker stated that at no time from June 2, 1964, until Brewer's death on September 18, 1968, did the decedent submit a written or oral demand for the money, and further that Becker did not promise in writing to repay the money.

The only other writing admitted in evidence was a letter written by Becker to the decedent on April 15, 1968. That letter, allegedly written in response to a telephone call made by Brewer to Becker, reads in part as follows:

"Dear Fred;

"Sorry to take so long in answering your call. I had a cust. at my desk when you called so I couldn't talk freely.

"Lots of things happen Fred which sometimes makes it imposible (sic) to do what we want to. As I told you the last time I saw you the money went for hospital care for my mother, and as you know she is living with us. I know that we haven't done what is right but my salary and supporting her just doesn't leave room for any savings.

**350**

\* \* \* \* \* \*

"Fred I'm really sorry we can't due (sic) what you ask because this is the 1st time you've ever ask (sic) anything of us and to turn you down seems almost to (sic) much but we just don't have the money right now. If it is something life and death I might be able to borrow on our furniture.

/s/ John"

Becker, in his deposition and on cross-examination during the trial, testified that when he wrote in the letter, " \* \* \* the money went for hospital care \* \* \*" he had reference to the $5000 sum received from Brewer as well as other sums of money received from other sources. Becker did not at any point in answering questions concerning his purpose in writing this letter indicate that the letter was an acknowledgment of an obligation to repay the $5,000 sum.

The foregoing is the substance of the facts relating to the transaction. We turn now to the questions presented by this appeal.

■ The trial judge made no express findings of fact and conclusions of law, no request therefor having been made. 16 A.R.S., Rules of Civil Procedure, Rule 52(a). When no such request is made, this Court must assume that the trial court found every controverted issue of fact necessary to sustain the judgment and, if there is reasonable evidence to support such finding, sustain the judgment. Silva v. DeMund, 81 Ariz. 47, 299 P.2d 638 (1956).

In examining the record herein it is imperative that we first determine whether there was evidence to support the appellee's position that there was no loan.

■ The only writings in evidence are the check and letter hereinbefore set forth. Appellant argues that the presence of the notation on the face of the check, "Loan J. B & Imogene Becker", and the signature of appellee which was a blank endorsement on the reverse side of the check is sufficient evidence that both parties intended the $5,000 sum to be a loan. It is the general rule that memoranda or marginal notations placed on a bill or note at the time of the execution thereof with the intention of making them a part of the contract constitute a part of the contract and must be construed with the body of the instrument to arrive at the agreement existing between the parties. Re Feldman's Estate, 387 Ill. 568, 56 N.E. 2d 405, 155 A.L.R. 210 (1944).

■ A check, however, is merely an order for payment and, standing alone, indicates a payment and not a loan. Bernard v. Fee's Estate, 129 Mich. 429, 88 N.W. 1052 (1902). To render a contract enforceable the writing must with reasonable certainty express the subject matter to which the contract related and the terms and conditions of all the promises constituting the contract, and by whom and to whom the promises were made. Durham v. Dodd, 79 Ariz. 168, 285 P.2d 747 (1955).

A case having facts similar to the facts in the case at bar is First National Bank at Cody v. Fay, 80 Wyo. 245, 341 P.2d 79 (1959). That was an action for money lent (*assumpsit*) by the trustees of the estate of an owner and holder of a $5000 cashier's check which had on the back a typewritten notation making the check payable to defendants and stating: "Loan on contract note of even date. \* \* \*" On the back also there appeared the typewritten name of the decedent (the maker) and the endorsement of the defendants. The defendants claimed the $5000 was a gift to them from the deceased. The plaintiffs rested their case after putting the check in evidence and after showing that the defendants received the proceeds therof. The trial court's general finding for the defendants was affirmed, the Supreme Court of Wyoming stating:

" \* \* \* In either view [implied or express contract] the appellants' position is tantamount to saying that an unexplained payment by one person to an-

other presupposes that such payment is a loan unless the payee is able to prove to the contrary.

"This would indeed be a strange rule of law if we must be put to proof that all moneys coming into our possession were not paid to us as a loan." 80 Wyo. at 255, 256, 341 P.2d at 82

A loan is made when the borrower receives money over which he exercises dominion and which he expressly or impliedly promises to return. Rogers v. Hannon-Hatch Post No. 9929, V.F.W. of United States, 23 Conn.Supp. 326, 1 Conn. Cir. 221, 182 A.2d 923 (1962); 54 C.J.S. Loan p. 654. Viewing, as we must, the evidence concerning the existence or nonexistence of a loan, Todaro v. Gardner, 72 Ariz. 87, 231 P.2d 435 (1951), we must assume that the court did not find in the foregoing evidence an agreement to repay the sum of money. The appellees' letter does not focus sufficiently upon the alleged $5,000 loan to be, as urged by the appellant, an admission of the existence of the loan.

We assume that the trial court determined that the appellant did not sustain his burden of showing that the appellees had an obligation to repay the money or that they either expressly or impliedly ever promised to repay it. The record supports the judgment on either basis. We find it unnecessary for the disposition of this appeal to comment upon the remaining arguments advanced by the appellant.

Affirmed.

STEVENS, P. J., and MORRIS ROZAR, Judge of Maricopa County Superior Court, concur.

NOTE: The Honorable JAMES DUKE CAMERON was a member of Department A of Division One of the Court of Appeals at the time this cause was argued. He requested that he be relieved from consideration of this matter and The Honorable MORRIS ROZAR, a Judge of the Superior Court, was called to sit in his stead and participate in the determination of this decision.