Al WARD, d/b/a Ward's Used Iron, Appellant (Plaintiff),

v.

FIRST INTERSTATE BANK OF RIVERTON, Appellee (Defendant).

No. 85–266.

Supreme Court of Wyoming.

May 1, 1986.

F.M. Andrews, Jr. of Andrews & Anderson, P.C., Riverton, for appellant.

James L. Hettinger and Jay E. Vincent (Student Intern) of Hettinger & Leedy, P.C., Riverton, for appellee.

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT and MACY, JJ.

BROWN, Justice.

This case involves the issue of whether a purchaser of a cashier's check can require the issuing bank to stop payment on the check. Appellant Al Ward dba Ward's Used Iron filed a complaint against appellee First Interstate Bank of Riverton praying that the bank be required to stop payment on a cashier's check purchased by appellant. The trial court granted summary judgment in favor of the bank and appellant brings this appeal.

We will affirm.

The facts show that appellant purchased a cashier's check from the bank on July 2, 1982, in the amount of $29,356.80. The check was delivered to the payee, Davis Oil Company; however, the check was never presented to the bank for payment. When appellant demanded that the bank stop payment on the check, the bank refused.

Appellant then filed this action praying that the bank be required to stop payment on the cashier's check, contending a reasonable time for presentment had passed and the check was stale. Appellant later filed an amended complaint alleging that the bank was being unjustly enriched by the use of the money during the time the check

was outstanding, so the bank should be required to pay appellant interest on the money held by the bank.

Appellant claims summary judgment was improper inasmuch as there is a genuine issue of material fact regarding whether a reasonable time for presentment has passed. Appellant also asks whether his complaint states a claim for relief.

We begin by stating our oft-cited standards of review. When reviewing a summary judgment on appeal, we review the judgment in the same light as the district court, using the same information. *Toltec Watershed Improvement District v. Johnston*, Wyo., 717 P.2d 808 (1986). A party moving for summary judgment has the burden of proving the nonexistence of a genuine issue of material fact. *Dudley v. East Ridge Development Company*, Wyo., 694 P.2d 113 (1985). A material fact has been defined as one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted. *Samuel Mares Post No. 8, American Legion, Department of Wyoming v. Board of County Commissioners of the County of Converse*, Wyo., 697 P.2d 1040 (1985). When examining a summary judgment, we view the record from the vantage point most favorable to the party opposing the motion, giving him all favorable inferences which may be drawn from the facts. *Randolph v. Gilpatrick Construction Company, Inc.*, Wyo., 702 P.2d 142 (1985).

■ As noted above, appellant claims there was an issue as to whether a reasonable time for presentment of the check has passed. An instrument must be presented for payment within a reasonable time after its issuance, such time being determined by the nature of the instrument and consideration of the facts of each case. § 34–21–359, W.S.1977. That general principle is correct, but we fail to see how it is applicable here. The check was delivered to the payee, Davis Oil Company, and is presumably still in the payee's possession. The issue of reasonable time for presentment of the check will come into play, if at all, when the check is presented for payment.

■ A cashier's check differs from an ordinary check drawn on a customer's checking account. A cashier's check is a bill of exchange drawn by the bank as drawer upon itself as drawee.

"A cashier's check is a bill of exchange, drawn by the bank upon itself, and is accepted by the act of issuance. While the only apparent basic or factual difference between a cashier's check and the ordinary check is that the ordinary check is drawn on one other than the drawer, while in a cashier's check both the drawer and the drawee are the same, there are certain differences, some radical, in the incidents and consequences of the two types of checks. A cashier's check is a primary obligation of the bank, rather than the depositor, as in the case of an ordinary check, and a promise to pay which ordinarily cannot be countermanded. It is issued by the authorized officer of a bank, directed to another person, evidencing the fact that the payee is authorized to demand and receive from the bank, upon presentation, the amount of money represented by the check. Cashiers' checks, from their peculiar character and general use in the commercial world, are regarded substantially as the money which they represent, a rule that is not extended to ordinary checks of the depositor drawn on his bank." 10 Am. Jur.2d Banks § 544, pp. 518–519 (1963).

■ Since a cashier's check is accepted by the very act of issuance, it is generally recognized that a cashier's check is not subject to stop payment or countermand in the absence of mistake or fraud.

"A cashier's check, since it is merely a bill of exchange drawn by a bank upon itself and is accepted in advance by the act of its issuance, is not subject to countermand like an ordinary check; the relations of the parties to such an instrument are analogous to those of the parties to a negotiable promissory note payable on demand. Thus, since a cashier's check is presumably purchased for a sufficient

consideration, it is ordinarily beyond the power of the purchaser or the bank issuing it to stop payment thereon. Once the cashier's check is negotiated to a holder in due course, the credit and resources of the payee are no longer primarily involved; it is then a primary obligation of the bank and, upon presentment of the check for payment, the bank must honor the check. * * * " 10 Am.Jur.2d Banks § 643, pp. 614-615 (1963).

Such principles are in accord with Wyoming statutory law. Under Wyoming's Uniform Commercial Code (§§ 34-21-101 to 34-21-1002, W.S.1977), a cashier's check is a bill of exchange drawn by a bank upon itself, and is considered accepted when issued. § 34-21-347, W.S.1977. An item which has been accepted or certified by the bank may not be countermanded. § 34-21-452. See also Official Comment 5, UCC § 4-403 (1977).

In *Dziurak v. Chase Manhattan Bank,* 44 N.Y.2d 776, 406 N.Y.S.2d 30, 377 N.E.2d 474 (1978), a customer requested the bank to issue a cashier's check payable to his order and, upon issuance, endorsed the check and delivered it to a third party. Thereafter, the customer sought to stop payment on the check which was refused. The New York appellate court held that a cashier's check was not an item payable for a customer's account and therefore the bank was under no legal obligation to honor the customer's order to stop payment.

In *Matter of Kimball,* Bkrtcy., 16 B.R. 201, 203 (1981), it was stated:

"Considering the nature of a cashier's check, this Court is satisfied that there is no legally significant difference between currency and a cashier's check, therefore, it represents payment when delivered. While at first blush it may appear that the purchaser may stop payment by directing the issuing bank not to honor the cashier's check, just as the maker may stop payment on an ordinary check, this is not the case at all. On the contrary, it is established that under Fla. Stat. §§ 673.3-413, 673.3-410, 674.4-303 (UCC §§ 3-413, 4-303), a cashier's check

is accepted by the very act of issuance. It becomes a primary obligation of the issuing bank rather than the purchaser, and represents an absolute, irrevocable promise of the bank to honor same when presented for collection. Neither the bank nor the purchaser have any authority to countermand the cashier's check after issuance. [Citations.]"

See also, *Able & Associates, Inc. v. Orchard Hill Farms of Illinois,* 77 Ill.App.3d 375, 32 Ill.Dec. 757, 395 N.E.2d 1138 (1979); *Bruno v. Collective Federal Savings and Loan Association,* 147 N.J.Super. 115, 370 A.2d 874 (1977); *Yukon National Bank v. Modern Builders Supply, Inc.,* Okl.App., 686 P.2d 307 (1984).

This case is distinguishable from that of *Santos v. First National Bank,* 186 N.J. Super. 52, 451 A.2d 401 (1982), upon which appellant relies. In that case, the purchaser was also the payee of the cashier's check. Consequently, although as the purchaser, he might well be foreclosed from stopping payment or attempting to recover the amount paid for the cashier's check, as the payee named in the check he did have an ownership interest which he endeavored to assert on the basis that the original instrument had been lost. Factually that case is quite different from this one. Even so, appellant relies upon that case as justification for asking this court to fashion an equitable remedy.

■ Appellant also seeks equity in asking that "the bank not be unjustly enriched by the use of appellant's funds during the running of the statute of limitations." The basis of unjust enrichment is that one has funds belonging to another which equity and good conscience demand ought to be paid to the other. Restatement, Restitution § 1 (1937, 1962 Reprint); *Cohon v. Oscar L. Paris Company,* 17 Ill.App.2d 21, 149 N.E.2d 472 (1958).

■ Again, we agree with this general principle, but fail to see its applicability here. As shown earlier, appellant has no superior interest to the money since appellee is now obligated to pay the money when

the check is presented by the payee or a holder in due course. A somewhat similar argument was presented in *First National Bank of Cody v. Fay*, Wyo., 80 Wyo. 245, 341 P.2d 79 (1959). We rejected the argument and stated:

"The premise of appellant's claim that defendants will be unjustly enriched if permitted to retain the money assumes that whenever money has been received the recipient is not entitled to retain it unless he is able to affirmatively prove his right to do so. This is entirely unsound and its unwisdom becomes apparent if the same idea is expressed in a somewhat different fashion. For instance, it would mean that whenever a person receives money, he must thereafter be prepared to assume the burden of proving that he should not be legally or equitably called upon to repay it. Envisioning the impossible situations which would arise under such a rule, would cause us to discard any such rash philosophy. That is simply not the law. * * *" Id., 341 P.2d at 83-84.

Furthermore, although the bank may be technically enriched during the time it holds the money prior to presentment of the check, appellant has failed to show that such enrichment is unjust. It is the normal course of business for a bank to hold funds until a check is presented for payment.

Having found no reversible error, the summary judgment granted by the trial court is affirmed in all respects.

Affirmed.