**NEW COVENANT COMMUNITY CHURCH, a non-profit organization, Appellant,**

v.

**FEDERAL NATIONAL BANK & TRUST CO. OF SHAWNEE, OKLAHOMA, a banking institution, Appellee.**

No. 65697.

Court of Appeals of Oklahoma, Division No. 1.

March 3, 1987.

Richard E. Hornbeek, Oklahoma City, Okl., for appellant.

James T. Stuart, Shawnee, Okl., for appellee.

GARRETT, Judge:

This is an appeal from the trial court's sustaining a motion to dismiss on the grounds that the plaintiff below, Appellant herein, failed to state a claim on which relief can be granted or, in the alternative, that the claim was barred by the statute of limitations. The parties will be referred to as they appeared below.

---

**19.** *Beights v. W.R. Grace & Company,* 62 F.R.D.     546, (W.D.Okla.1974).

On June 30, 1982, the defendant, Federal National Bank and Trust Company of Shawnee, Oklahoma ("Bank"), issued a cashier's check in the amount of $325,000.00 to the New Covenant Community Church ("Church") and Living Way Ministries Church ("Living Way") as payees. Living Way was the purchaser of the cashier's check and a named payee. Living Way promptly negotiated and endorsed the cashier's check to Church in satisfaction of a previously incurred obligation. On July 1, 1982, with proper endorsement, Church deposited the check in its account with the Penn Square Bank in Oklahoma City. The following day, July 2, 1982, Penn Square Bank was closed by the Federal Deposit Insurance Corporation.

Immediately upon learning of the demise of Penn Square Bank, both Church and Living Way made demand on Bank to stop payment on the cashier's check. Bank informed them it could not stop payment. The check was presented to Bank for payment sometime after July 2, 1982. Due to the failure of Penn Square Bank, Church lost $215,262.20 of the $325,000.00

Church then brought this action against Bank for recovery of the $215,262.20 and punitive damages in the amount of $1,000,000.00. Bank filed an answer and its dismissal motion based on grounds set out above. The trial court sustained the motion. From that order, Church perfects this appeal. Living Way was not a party below or to this appeal.

In its motion to dismiss, Defendant Bank stated there was no claim on which relief could have been granted because, as a matter of law, Defendant Bank could not have stopped payment on a cashier's check. Plaintiff Church counters with the argument that once Church placed the check into banking channels for collection, it appointed all collecting and intermediate banks as its agents and sub-agents for the purposes of collection, pursuant to The Oklahoma Uniform Commercial Code, 12A O.S. 1981 § 4–201(1) ("UCC"). Church claims that upon issuance of the check, the defendant became primarily obligated for payment of the check and that this obligation was contractual in nature, according to UCC § 3–413. It claims the cashier's check, then, represented the Bank's written promise to pay a sum certain to the order of the now solo payee/owner Church. Church further argues Penn Square Bank and any other intermediate or collecting banks were only acting as agents and subagents of Church. Church contends it still owned the check and had the right to order the manner of payment. Church also argues it maintained the right, as principal, to revoke its agent's authority to collect the item on its behalf. When the defendant Bank paid the cashier's check contrary to the order of its owner, Church, Bank breached its contractual obligations and converted plaintiff Church's property. Church cites UCC § 3–413(1) and UCC § 3–419(1) as authority.

Church also contends that UCC § 4–403, relied upon by Bank, is inapplicable as it deals only where a bank customer, with an account at the bank, writes a personal check payable on said account. Therefore, it could not govern the issuance of a cashier's check. Since there is no other UCC provision which governs, Church argues the common law does give the payee a right to stop payment on a cashier's check, citing the case of *Wolf v. Title Guarantee & Trust Co.*, 251 App.Div. 354, 296 N.Y. Supp. 800 (1937) as authority. Church argues where the UCC is silent, the common law may be resuscitated to fill the void.

Section 4–403(1) of Oklahoma's Uniform Commercial Code states:

A customer may by order to his bank stop payment of any item payable for his account but the order must be received at such time and in such manner as to afford the bank a reasonable opportunity to act on it *prior to any action* by the bank with respect to the item described in § 4–403. (Emphasis ours.)

The right to stop payment is limited to a customer. UCC § 4–104(1)(e) is as follows:

(1) In this Article unless the context otherwise requires

.    .    .    .    .

(e) 'customer' means any person having an account with a bank or for whom a bank has agreed to collect items and includes a bank carrying an account with another bank;

.    .    .    .    .

■ The Oklahoma Code Comment following 12A O.S.A. § 4–403, in pertinent part, is as follows:

Any ... notice or stop-order received by, ... a payor bank, whether or not effective under other rules of law to terminate, suspend or modify the bank's right or duty to pay an item ... comes too late to so terminate, suspend or modify such right or duty if the ... notice or stop-order ... is received ... and a reasonable time for the bank to act thereon expires or the setoff is exercised after the bank has ...

(a) accepted or certified the item....

Section 3–410(1) defines acceptance as the "drawee's signed engagement to honor the draft as presented.... It becomes operative when completed by delivery or notification."

Here, the drawee Bank's signed engagement to honor the draft was contemporaneous with its act of issuing the cashier's check. That is, it both issued and accepted the check at the same time. The acceptance became operative upon delivery of the check to Living Way and Church. Living Way, as stated, endorsed its rights in the check to Church. Thus, any stop payment order from Church which came after the date of issuance of the check on June 30, 1982, came after the check was accepted, and violated the provisions of § 4–303(1)(a). We hold that under the UCC as applied to the facts at bar, Church could not have requested a stop order to Bank after June 30, 1982, because it came after the acceptance of the check by the defendant Bank.

This principle was announced in *Yukon National Bank v. Modern Builders Sup-*

*ply,* 686 P.2d 307, 308 (Okla.App.1984) and cited with approval in *Ward v. Interstate Bank of Riverton,* 718 P.2d 886, 889 (Wyo. 1986).

■ As a general rule, neither a bank nor a bank customer may order a stop payment on a cashier's check. See Annotation at 97 A.L.R. 3d 714–729.

We are not persuaded by Church's argument to apply the common law where the Uniform Commercial Code is silent. The Official Comment to 12A O.S.A. 1981 3–101 states:

The Article [3 of the UCC governing the case at bar] represents a complete revision and modernization of the Uniform Negotiable Instruments Law ... Needless to say, in the 50 odd years of the history of that statute [codifying common law principles], there have been vast changes in the commercial practices relating to the handling of negotiable instruments. The need for revision was felt for some years before the present project was undertaken.

We find no UCC, contractual or common law duty to Church was breached by Bank. Therefore, that portion of the trial court order sustaining the defendant Bank's motion to dismiss for failure to state a claim upon which relief could be granted is affirmed.

Having thus ruled on the Appellant Church's first proposition, we need not address its proposition regarding the statute of limitations.

AFFIRMED.

ROBINSON, P.J., concurs.

REYNOLDS, J., not participating.