Vera McCORMICK and Richard McCormick, d.b.a. McCormick Agency, Appellants (Plaintiffs below),

v.

Albert SEWELL and Shirley Sewell, Appellees (Defendants below).

No. 3073.

Supreme Court of Wyoming.

June 20, 1962.

Robert R. Rose, Jr., Casper, for appellants.

Maurer & Garst and Joseph Garst, Douglas, for appellees.

Before BLUME, C. J., and PARKER, HARNSBERGER, and McINTYRE, JJ.

Mr. Justice PARKER delivered the opinion of the court.

This is a suit, the prayer of which asked damages in the amount of $5,500 because defendants having sold certain real property for $110,000 refused to pay plaintiffs a commission. The court found for the defendants and plaintiffs have appealed. The Sewells on December 26, 1958, had signed a printed form denominated "Real Estates Brokers Agency Contract," listing with the McCormick Agency their 1,803-acre ranch property for $145,000 during a term of 365 days. The form provided, "If you are successful in finding a purchaser for said property, or if the same is sold within a period of 60 days from the expiration of this listing to anyone to whom you have shown the property and of whom we have had notice, we agree to pay you a commission according to the schedule printed below." It contained the words "grant you the exclusive right to sell" but the word "exclusive" was blocked out. Because the place did not sell at the mentioned price, Albert Sewell on September 30, 1959, signed another form identical to the previous one except that the word "exclusive" was not deleted. The period in this instance was ninety days and the price $110,000. In February 1960 defendants negotiated with plaintiffs regarding the sale of the ranch to prospective buyers by the name of Rothleutner who had first evinced an interest in the ranch in November 1959. According to defendants' testimony, they talked to Vera McCormick on the afternoon of February 16 and told her they would give her one more day to make a sale to the Rothleutners and if this could not be done the McCormicks were through. Mrs. McCormick said that she would have the Rothleutners out to the place the next day. That evening when the Sewells returned home they found from their daughter and son-in-law that Etta Nichols, a neighbor, had inquired about the purchase of their ranch. They

went over to her home, told her that the McCormicks had one more day for the sale to the Rothleutners, who were to be out on the morrow, and that they would let her know whether or not it sold. On February 17 the Rothleutners came, talked for some two hours, but said that they could not raise the money, and left. That evening an option agreement was signed by the Sewells and Mrs. Nichols, by which the latter paid $1,000 down on defendants' ranch at a sales price of $110,000, the actual contract for the sale being drawn by an attorney on March 30 and the sale thereafter consummated. Plaintiffs admitted that they had never shown Mrs. Nichols the ranch but testified that they had discussed the purchase of it with her. Mrs. Nichols' testimony was to the contrary, and she said that they had never shown her the Sewell ranch or discussed the purchase of it with her but that she had listed her place after the McCormicks had come out and "wanted to put it in with the Sewell place, said they really belonged together." She was not at all interested in buying the Sewell ranch but about the sixteenth a neighboring ranch which the Nichols had contemplated adding to their place had been "sold out from under" them. They then considered a number of circumstances regarding the land in the area and decided that they would try to purchase the Sewell ranch, which, as the McCormicks had told her, really belonged with her own. Defendants' daughter and her husband testified that Richard McCormick visited them at the ranch about a week after the execution of the option and then said "I didn't even think of her as a buyer."

According to the testimony presented by defendants, some ten days after the signing of the option they went in to the McCormicks' place of business and told them that they would give them some money to help defray expenses of advertising and a trip to South Dakota to see the Rothleutners since this seemed fair. The McCormicks refused and demanded the full commission for the sale.

■ The ground relied upon by plaintiffs in seeking the reversal of the judgment is that the "property was sold to a purchaser found and produced by the Appellants within the time allowed in the contract [listing]." They mistake the function of this court in here arguing as they did before the trial court, "The conflict in testimony in this case is almost beyond comprehension. The first problem for decision of the Court will be to determine who is telling the truth * * *. * * * we call the Court's attention to what we think is a primary consideration, namely: Was the agency involved here revoked in good faith?" They overlook fundamental principles of law always adhered to in this jurisdiction. The trial court was the sole determiner of the credibility of the witnesses, Rossin v. Ward, Wyo., 363 P.2d 919; and the appellate court must assume that evidence in favor of the successful party is true, leave out of consideration entirely evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference which may reasonably and fairly be drawn from it, Millar v. Millar, Wyo., 369 P.2d 207. Although the testimony presented by plaintiffs, much of which is the basis for brief and argument here, differed in some respects from that of the defendants as outlined, this court is not in a position to "determine who is telling the truth."

We find that there was substantial evidence to show that any oral extension of the September 30, 1959, listing was revoked in good faith on February 16, 1960, at a time before the sale to Mrs. Nichols was made by the owners, and that the broker did not show the property to her and was in no way responsible for the sale.

Affirmed.