## WILLIS v. WILLIS

(No. 1878; February 18, 1936; 54 Pac. (2d) 814)

For prior opinion, see 48 Wyoming 403, 49 Pac. (2d) 670.

In support of the petition for rehearing, there were briefs by *Armstrong & Armstrong,* of Rawlins.

In opposition to the petition, there was a brief by *T. S. Taliaferro, Jr.,* of Rock Springs.

BLUME, Justice.

A petition for rehearing, with the assignment of a number of errors and a lengthy brief, has been filed herein by the plaintiff. Our original opinion is long; we attempted to take up and discuss at some length each and every point which we deemed important, and stated that on account of the many points argued, we could not discuss every one of them. So we hesitate to add anything more to the discussion of this case. But counsel for plaintiff have shown such zeal in the cause, and have evidently so thoroughly persuaded themselves of the injustice perpetrated upon their client by the trial court and this court, that we shall discuss the assignments of error herein, in so far as we did not, or did not fully, discuss the points involved in the original opinion.

1. Counsel complain that we wrongly stated that the "plaintiff" rather than "defendant" owned the building in which the cabaret was conducted. The error, unfortunately, was a clerical error, but we think it did no harm. Counsel also state that we wrongly stated that plaintiff's "son" was living with the defendant part of the time, instead, apparently, of plaintiff's "foster son." The real relation of this man seems to have been a "brother" of plaintiff, rather than a brother of the daughter, as we took it (Record, p. 172). We think, however, that the error was immaterial.

2. Counsel again argue at great length that the court, in giving plaintiff judgment for $600 on her second cause of action, on account of money loaned to defendant, thereby also found that the plaintiff lived with the defendant in good faith, believing that she was his wife, and that, accordingly, the judgment on the first cause of action also should have been in plaintiff's favor. We have, however, been unable to come to this view. Our statement on this point in the original opinion was, perhaps, somewhat incomplete, since money loaned, to the knowledge of both parties, to be devoted to an illegal purpose cannot be recovered. The money loaned in this case was used in buying clothes, etc., all of it, apparently, for lawful purposes. In and of themselves, at least, the loans were not illegal. If they were illegal at all, they were made so by extrinsic circumstances. The court may not have found any unlawful purpose or necessary connection with an unlawful purpose. To show that there was at least no necessary inconsistency in the findings of the court, we need to give but one illustration from our own cases. The loans were at least collateral to the main transaction which the court held illegal. This court said in Kennedy v. Lonabaugh, 19 Wyo. 352, 375, 117 Pac. 1079, quoting from another case:

"When the advances have been made upon a new contract, remotely connected with the original illegal contract or transaction, and the title or right of the party to recover is not dependent upon that contract, and his case may be proved without reference to it, then he is entitled to recover."

See also Paige on Contracts (2nd Ed.), Sec. 1103; Williston on Contracts, Sec. 1753. Now the trial court herein may have based its conclusion on the fact that the loans were only remotely connected with the fact of the parties living together, and that the court decided the case upon this or some other theory is apparent, since we cannot presume that the court intended to decide the case wrongly. Whether such holding would in fact be right or wrong is not the question. The point is, that recovery on the second cause of action did not, as counsel claim, necessarily include a finding that plaintiff lived with the defendant in good faith. The court may have been wrong. But it has jurisdiction to decide wrongly, and its decision would be binding unless appealed from. No appeal from the judgment on the second cause of action was taken, and plaintiff could not complain since the decision thereon was in her favor.

3. Counsel also claim that we overlooked the testimony of the defendant that plaintiff lived with him as a domestic servant; that this admission was conclusive on him, and he could not contradict it. A great many authorities declaring that judicial admissions can not be contradicted have been cited. We do not find them in point herein. The matter arose, stated briefly, as follows: Counsel for plaintiff was cross-examining defendant on the answer filed by him in court on August 27, 1932, and then asked: "Now is that true or not true, that she received money from you, and that she was working for you as a domestic servant? That is what you call it here. Now is that right or not right?

A. I didn't write that. I don't know. Q. You think that is right, however? A. Yes, that is right." Counsel overlook the other testimony which explains the quoted portions, and shows a meaning not at all in accord with that attributed to it by them and entirely contrary to the theory upon which defendant tried his case. The testimony must be examined as a whole. In the first place, the plaintiff admitted that she had claimed and testified in the divorce case that she was not a domestic servant. Is no force to be given to that? In the second place, many of the defendant's statements on the witness stand absolutely, directly or indirectly, contradicted the foregoing quoted statement. Some of them are mentioned in the former opinion. For instance, he testified: "Q. Did you employ her? A. No. sir. Q. She was not your employee at any time when she was there? A. At no time." Furthermore defendant pleaded and testified that whatever plaintiff did she did for her own pleasure and only when it suited her. The court was compelled, and it was its right, to weigh the testimony as a whole, and we are wholly unable to see how it is possible for counsel to find here a judicial admission operating as an estoppel.

Another judicial estoppel is claimed. Counsel argue that this arose out of the allegations of defendant's amended answer, which, counsel say, we overlooked. In paragraph 2 of the amended answer defendant admitted that plaintiff performed services in the rooming house owned and operated by defendant. In paragraph 3 he admitted that during the period between October, 1923 and July, 1931, he owned a cabaret and that plaintiff frequently played the piano therein and was a hostess at the amusements, etc. In paragraph 6 he alleged that all that the plaintiff did as above mentioned was for her own pleasure, and for her own entertainment to pass away hours which would otherwise

have been hours of idleness. It is argued that these allegations were binding on the defendant, and that he could not controvert them. He did not attempt to do so. Counsel draw the conclusion from these allegations that, the services being admitted, only the value thereof had to be shown, and that this was, as shown by uncontradicted witnesses, $150 per month. We are unable to see how the trial court was compelled to concur in any such conclusions. It is difficult to see why the defendant should be compelled to pay for things done by plaintiff for her own amusement and entertainment. As to the services on the rooming house, defendant testified that he had a housekeeper who attended to all things, and that he did not employ plaintiff; as to the cabaret, he testified that he did not employ plaintiff; that she conducted it for her own benefit and took all the receipts. He testified further that plaintiff was paid more than she was entitled to. The trial court, accordingly, had the right to come to a conclusion contrary to that contended for by counsel.

5. Counsel also argue that we erred in holding that the plaintiff could not recover on her first cause of action on an implied contract for services not incidental to the relation of concubinage. Some additional cases are cited to show that our statements (point 4e) in regard to incidental services by a wife are not correct. It may be that we should, in the proper case, re-examine that particular subject. But it was mentioned only by way of illustration, and is not necessary to be decided herein. No additional cases on the point directly involved herein are cited. We think that we said all that is necessary to be said on this point. This is particularly true in view of the defendant's testimony that the plaintiff was never employed by him, worked only for her own entertainment and amusement, took all the money that was earned in the cabaret and was paid in full for what she did.

6. It is also urged that we erred in holding that the cross-examination of plaintiff was not improper, and in holding that no express contract was shown. We stated our view on these points fully in point 4 (b) and (d) of the original opinion, and we have not been able to come to a contrary conclusion.

Counsel seem to think that we unnecessarily criticized plaintiff, and they particularly take exception to the statement that we should not go out of our way to find a rule by which plaintiff could recover herein, on account of the fact that her age and experience puts her in a different class from young, immature and unsophisticated girls. Some of the courts, at least, have deemed it wise to call attention to this fact. We concur in their opinion that reference thereto is not without value in cases arising in the future, and we think that counsel, upon further reflection, will agree with us. There lurks, we fear, in some of the statements of counsel the thought that we have been influenced by the unwarranted disclosure of the race of the parties involved herein. They say that "from the fact that the greater part of the court's opinion is devoted to consideration of the trial court's action in striking portions of plaintiff's pleading (referring evidently to the question of *res judicata)* it might appear that the court considers the case itself of little importance and not entitled to consideration." We can assure counsel that the race of the parties involved has not influenced us in the least, and while the question of *res judicata* takes up more than a third of the original opinion, on account of its importance, the other vital questions raised were, we think, considered at considerable length. We fear also that, while counsel do not think so, they have not sufficiently borne in mind that this is an appellate court; that a conflict in the testimony must be resolved by the trial court; that counsel have not been willing to recognize the conflict where it in

fact exists, and finally, that this court is directed by Section 89-1064, R. S. Wyo. 1931, not to reverse a case for any error which does not affect the substantial rights of the parties. We have found no sufficient reason to say, from an examination of the record, that substantial justice has not been administered, and the petition for rehearing must be denied. It is so ordered.

*Denied.*

KIMBALL, Ch. J., and RINER, J., concur.