**Olga ROSSIN, Appellant (Defendant below),**

v.

**Michael P. WARD, Appellee (Plaintiff below).**

No. 2981.

Supreme Court of Wyoming.

Aug. 8, 1961.

Paul Barber, of Barber & Miller, Casper, for appellant.

Marvin L. Bishop, Jr., and Marvin L. Bishop, III, Casper, for appellee.

Before BLUME, C. J., and PARKER, HARNSBERGER and McINTYRE, JJ.

Mr. Chief Justice BLUME delivered the opinion of the court.

In this case Michael P. Ward, plaintiff and appellee herein, sued Olga Rossin, defendant and appellant herein, for a sum of money, alleging "That Defendant owes Plaintiff $2,200.00 for money lent by Plaintiff to Defendant on September 23, 1959." In answer the defendant and appellant denied the allegation. The case was tried to the court without a jury and on February 26, 1960, the court rendered judgment in favor of the plaintiff and appellee for the sum of $2,200 and interest. From that judgment the defendant and appellant has appealed to this court.

The parties in this action are elderly people. Appellant was sixty-two years of age and the appellee seventy-four years of age at the time of the trial of this case. They had been acquainted with each other since 1949. Apparently they had adjoining ranches. The appellant sold her ranch in 1955 and moved to Casper. At the time when she left she gave to the appellee some personal property which she did not have time to sell. The value of that is not shown but it appears that it was simply a return for the help which appellee had extended to the appellant in feeding appellant's stock dur-

ing the winter. When appellant moved to Casper she bought a house and turned it into a rooming and boarding house. The appellee sold his ranch about June 1, 1959, and, at appellant's request, went to room with the appellant. In the latter part of June appellant asked the appellee to accompany her on a trip to Michigan to see her sister. The parties took this trip and appellant drove her 1956 Dodge sedan, appellee paying for the expenses for meals, lodging and fuel. On this trip the parties shared the same room in order to save money. Some two weeks after the parties had returned, the appellee was asked to remove his furniture from the appellant's garage because it made driving into the garage somewhat difficult. Appellee removed the furniture and left appellant's boarding house. Later, however, appellant asked the appellee to rent a cabin at the back of her property. Appellee did so and boarded with the appellant, paying for his board and his lodging. The appellant occasionally took the appellee riding in her automobile, including a couple of trips on which the appellee went hunting, apparently close to Casper, expecting to give whatever deer he might kill to the appellant.

On September 23, 1959, the parties went to the Coliseum Motor Company in Casper. At that time appellee gave to that company a check for $2,200 in order to get a Chrysler car for the appellant in exchange for her Dodge automobile. The testimony as to what took place on that day is very conflicting. The appellee testified as follows:

"Q. * * * Will you relate what, if anything, happened on September 23, 1958 [1959], in reference to automobiles? A. There was nothing ever said.

"Q. Well, what happened? A. She drove down, were going to take a ride or something like that, drove down and stopped outside the garage, and we went in there.

"Q. And what happened then? A. Well, she looked around the cars, and

I was walking around there, and then she said she would like to have that car.

"Q. What kind of car did she say? A. We were sitting in her car then, and, well, I says, 'I'll loan you the money today.'

"Q. When she selected this car, what did she say to you? A. Well, she didn't, she said she couldn't take it, and I told her I would loan her the money, and she said that was all right."

Thereupon Mrs. Rossin took the Chrysler car and appellee gave a check for $2,200 to the Coliseum Motor Company. No method of payment of the loan was mentioned, appellee stating "I thought she was all right, that she was honest." On cross-examination appellee repeated his statement that the check which he gave was for a loan to the appellant, stating at one place "She went around and said she would like to buy a car, we were sitting in the car then, and I said, 'I'll loan you the money if you want the car and take the car.'" He was asked on cross-examination:

"Q. Do you customarily go about handing money out to people? A. No, I work for my money, why should I give away money?"

The testimony of the appellant was quite different. She testified that appellee encouraged her to go over to the Coliseum Motor Company in order to look over the Chrysler cars which that company had for sale at a reduced price at that time. The car was taken to appellant's garage to see whether or not it would fit. When it was brought back the following took place, according to the appellant:

" * * * when he [the automobile agent] came back Mike said, 'Go ahead and draw up the papers.' And Mike sat down and wrote the check, and I turned to Mike and I said, 'Mike, just what kind of a deal do you have in mind?' Because I, it didn't make me feel good to be obligated to anyone. I have been a very independent per-

son myself and never been obligated to anyone, and I didn't like this being obligated to anyone. He said, and I said, 'What kind of a deal are you trying to make, Mike?' And he immediately said, 'No deal at all.' And that is all that was said. I didn't feel good about the deal and never thanked him for the car or the transaction because I just didn't like it * * *."

On October 7, 1959, a disagreement arose between appellant and appellee in reference to some dinner which appellee claimed appellant did not provide. Either on that day or the next, appellee asked appellant what she was going to do about the car and the money to pay for it. According to appellee, appellant said that she would take her old car back. The appellee then went to the Coliseum Motor Company. The salesman called the appellant and asked her whether or not she would take her old car car back and cancel the transaction. She refused to do so. As a result the suit herein was commenced.

█ At the beginning of the trial of the case, Mr. Barber, counsel for the appellant, stated: "If necessary, I would amend or move to amend at this time to state affirmatively the defense of gift in this situation." The court thereupon stated: "You are claiming it is a gift now, is that your position?" To which Mr. Barber answered: "That is our position, the only position we can stand on." It is stated in 38 C.J.S. Gifts § 65b, p. 858, as follows:

"* * * Likewise, where a gift is affirmatively set up in the answer by way of confession and avoidance or by other affirmative plea, the burden of establishing the gift is on the one asserting it. * * *"

In other words, the appellant at that time adopted the theory of a gift which placed the burden of proof upon her. It has frequently been said: "Parties cannot elect to try their causes on one theory in the lower court, and, when defeated on that line, assume a different position in the appellate court." 4 C.J. 701. See also 5 C.J.S. Appeal & Error § 1505. Counsel for appellant now has somewhat changed his theory and his position is stated as follows:

"To recover back this money, it was incumbent upon appellee to prove a reason valid in law, in equity, in justice, why appellant should repay this amount to him. Appellant contends that the burden of proof was on appellee to show a promise to repay by appellant, that there was no burden of proof upon appellant to establish a gift in order to prevail, and that there was no sufficient nor substantial evidence showing appellant was under any duty or obligation to repay the money, or that appellant either expressly or impliedly did promise to repay the money."

Counsel relies upon First National Bank at Cody v. Fay, 80 Wyo. 245, 341 P.2d 79, which case is in accordance with the rule stated as follows in 38 C.J.S. Gifts § 65b, p. 858:

"* * * On the other hand, if defendant merely pleads a denial to a complaint seeking to recover money or property, as in the case of an alleged loan, the burden of proof has been held to rest on plaintiff throughout the trial, although the burden of the evidence may shift to defendant with respect to his claim of a gift."

█ It does not make any difference under the evidence in this case as to what theory is adopted. The result will be the same. We have before us a typical case of conflicting testimony, the appellee claiming that the transaction here involved was a loan and the appellant claiming that there was "no deal", whatever that may mean. We have numerous times held that the trial court's finding should not be disturbed when there is conflicting testimony, unless such finding is clearly erroneous or against the great weight of the evidence. 1 West's Wyoming Digest, Appeal & Error, ☞1011 (1). The rule has been adopted in other cases similar to the case at bar. Van Dreal v. Van Dreal, 10 Cir., 214 F.2d 715; Peter-

son v. Anderson, 115 Utah 548, 206 P.2d 714. We do not agree with counsel for appellant that there is not sufficient evidence showing a loan in connection with the transaction here involved. In that connection, we have laid down the rule that:

"* * * it must be borne in mind that the appellate court must assume that the evidence in favor of the successful party is true, leave out of consideration entirely the evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference which may be reasonably and fairly drawn from it. * * *" Willis v. Willis, 48 Wyo. 403, 49 P.2d 670, 678, Id., 49 Wyo. 296, 54 P.2d 814.

That rule has been reiterated in numerous cases.

■■■ Counsel for appellant makes light of the testimony of the appellee, saying, among other things, that "In order to establish a loan, appellee went before the district court below with his bare testimony that he would loan her the money to buy the 1959 Chrysler." But the trial court saw the parties on the witness stand, and the credibility of the witnesses was for the trial court to decide and not for this court. Counsel for appellant mentions the fact that the appellant is poor and that it would be a burden upon her to repay the money, but counsel forgets that appellant had the opportunity of cancelling the transaction and getting back her Dodge automobile and being put back in her former status. Counsel also mentions the fact that the appellee took the initiative in connection with the transaction of purchasing the automobile, but that is inconsistent with the testimony of the appellee. Counsel also refers to the fact that the appellant gave appellee some personal property when she left her ranch in 1955 but he forgets the fact that the appellee had rendered very valuable services for the appellant during

the winter nor is the value of the property given in the evidence. Counsel also calls attention to the fact that no note or other evidence of indebtedness in writing appears herein. Of course it is always advisable to take such written evidence, but it is not essential in order to recover a loan if the oral testimony warrants it. Denver National Bank v. McLagan, 133 Colo. 487, 298 P.2d 386, 66 A.L.R.2d 1297. Counsel also contends that the doctrine "Falsus in uno, falsus in omnibus" should be applied in this case for the reason that it was admitted that if the agent of the Coliseum Motor Company were called he would testify that the appellee took the initiative in having the cars to be traded appraised which the appellee denied. However, the trial court had a right to accept the testimony of the appellee and if it did, as is evidently so, the doctrine mentioned has no application here whatever.

■■■ The testimony of appellee to the effect that the transaction was a loan is strongly corroborated by the other facts appearing herein. The parties at most were merely friends. The appellant was not the natural object of appellee's bounty. That fact is a highly important factor to be considered herein. 38 C.J.S. Gifts § 67c. The appellee owed the appellant nothing. He paid for his board and room and in this connection dealt with appellant at arm's length. While the appellee may have fair means for living expenses, the modest way in which he was living in Casper would seem to indicate that he is not rich so as to be able to give $2,200 away. Appellee has a wife to support. In the summer of 1959 she was temporarily living in California. In fact, the record herein does not suggest a single valid or substantial reason why appellee should make a gift of $2,200 to the appellant.

The judgment of the trial court should be and is affirmed.

Affirmed.