Glen M. ANDERSON and Marlene B. Anderson, Appellants (Plaintiffs),

v.

FOOTHILL INDUSTRIAL BANK, a Colorado financial organization, and Robert Stevens, a Colorado resident, Appellees (Defendants).

No. 83–80.

Supreme Court of Wyoming.

Jan. 5, 1984.

Rehearing Denied Jan. 24, 1984.

Kenneth R. Marken, Casper, for appellants.

J.N. Murdock and W.W. Reeves, Vlastos, Reeves, Murdock & Brooks, Casper, for appellees.

Before ROONEY, C.J., THOMAS, ROSE and BROWN, JJ., and RAPER, J., Ret.

ROONEY, Chief Justice.

In an action against appellees, appellants sought the following relief: (1) return of all principal and loan finance charges (totaling $31,512.28) paid by appellants to appellee Foothill Industrial Bank to retire a loan; (2) refund of excess amount paid on prepayment of said loan ($1,449.68) plus a penalty of not more than the loan finance charge, by virtue of appellee Foothill Industrial Bank's failure to make such a refund within a reasonable time after demand; (3) statutory penalty damages ($1,000.00) for various violations of federal and state disclosure laws; and (4) attorney fees.

Appellants appeal from a judgment rendered on a jury verdict which awarded them damages in the amount of $2,032.36 against which the trial court offset appellees' costs for failure on the part of appellants to accept appellees' prior offer of judgment,[1] leaving a net judgment of only $1,186.36. Error is alleged in assessment of damages, inadequate damages resulting from passion and prejudice and/or misleading instructions; error in awarding costs to appellees and denying costs and attorney fees to appellants; and error in granting appellees' motion for directed verdict on appellants' cause of action in deceit.

We affirm.

In early September of 1980, appellants contracted with the United States Postal Service to deliver mail on a route from Casper to Rawlins, Wyoming, starting on or about September 20, 1980. In order to fulfill this contract, appellants needed a loan to purchase a truck to be used in the mail route, and a trailer home for appellant Glen Anderson to stay in overnight in Rawlins. Appellants discussed their finances with various financial institutions in Casper, and ultimately arranged with appellee Foothill Industrial Bank to borrow $27,500.00. The proceeds of this loan were used to satisfy a previous second mortgage on appellants' residence in the amount of $14,882.26, to lease and operate a truck and a trailer for use in the mail-delivery route and for start-up expenses. Approximately five months later, appellant refinanced the loan with another financial institution to acquire funding for a replacement truck, and in the process of refinancing and prepaying the original loan to appellee Foothill Industrial Bank, this lawsuit arose.

Appellants alleged at trial that appellee Foothill Industrial Bank had failed to comply with Wyoming's Uniform Consumer Credit Code (U.C.C.C.)[2] and the federal Truth in Lending Act by failing to have authorization from the Wyoming State Examiner's office to make supervised loans, by

---

1. Appellees filed an Offer of Judgment prior to trial, in the amount of $10,000 plus satisfaction of a judgment held against appellants by Foothill Industrial Bank's sister corporation, valued at approximately $6,000.

2. Sections 40–14–101 to 40–14–702, W.S.1977.

assessing an unlawfully high amount of accrued interest charges upon prepayment of the loan, by serving appellants with a deficient disclosure statement upon the making of the loan, by charging them an unlawful amount of finance charges, and by misrepresenting the annual percentage rate of the loan.

These allegations of appellants are premised on the fact of the loan being a consumer loan and not a commercial loan. The U.C.C.C. applies only to consumer loans and not to commercial loans. A consumer loan is defined in § 40–14–304, W.S.1977, as follows:

"(a) Except with respect to a loan primarily secured by an interest in land (section 3–105 [§ 40–14–305] ), 'consumer loan' is a loan made by a person regularly engaged in the business of making loans in which:

"(i) The debtor is a person other than an organization;

"(ii) The debt is incurred primarily for a personal, family, household or agricultural purpose;

"(iii) Whether the debt is payable in installments or a loan finance charge is made; and

"(iv) Either the principal does not exceed twenty-five thousand dollars ($25,-000.00) or the debt is secured by an interest in land."

Before determining the nature of this loan as a consumer or commercial loan, the manner in which we consider the evidence is pertinent. We have often recognized the proposition as stated in *Distad v. Cubin,* Wyo., 633 P.2d 167, 180 (1981):

" * * * On appeal we assume the evidence in favor of the successful party is true and leave out of consideration entirely the evidence presented by the unsuccessful party in conflict therewith, and we give the evidence of the successful party every reasonable inference that may be reasonably drawn from it. * * * " Citing, *Brittain v. Booth,* Wyo., 601 P.2d 532 (1979).

Appellants seem to contend that the proposition should be applied to acceptance, etc.,

of the evidence in their favor since the verdict awarded damages in their favor, albeit only in a small fractional amount of that requested. However, inasmuch as appellants, through their appeal, assert that the judgment was adverse to their entitlement, they are not the prevailing party. We said in *Louth v. Kaser,* Wyo., 405 P.2d 276, 278 (1965):

"Appellant contends that under previous holding of this court we must assume the evidence in favor of Louth is true, leaving out of consideration entirely the evidence of the Kasers in conflict therewith and give Louth's evidence every favorable inference which may be reasonably and fairly drawn, referring us to *Willis v. Willis,* 48 Wyo. 403, 49 P.2d 670, rehearing denied 49 Wyo. 296, 54 P.2d 814. But appellant mistakes Louth's position in this appeal. Here Louth in this appeal is asking this court for additur, the effect of which is to contend the award of $600 to Louth was adverse to his entitlement. This places Louth in the position of a defeated and unsuccessful party. Therefore, we must consider only the evidence most favorable to the Kasers in passing upon the correctness of the jury's verdict and the court's judgment."

With reference to the judgment, we have held that:

" * * * In addition to the facts specially found, the trial court is assumed to have found those consistent facts which support the judgment, and the trial court's findings are entitled to benefit of all reasonable inferences in support thereof. *Hanna State & Savings Bank v. Matson,* 53 Wyo. 1, 77 P.2d 621 (1938); *Seibel v. Bath,* 5 Wyo. 409, 40 P. 756 (1895)." *Starrett v. Shepard,* Wyo., 606 P.2d 1247, 1249 (1980).

Considering the evidence in this case in accordance with the foregoing, we find that it established the loan to be a commercial loan and not a consumer loan as a matter of fact. Appellant Glen Anderson inquired of three lendors in an attempt to secure the money for his mail route business. He told the loan officer at Person-to-

Person that the money was to be used to "buy a mail route." At First Wyoming Bank, he said that it was to be used to operate a truck or otherwise engage in the mail route. He told the representative of appellee Foothill Industrial Bank that it was for a down payment on a truck and for start-up expenses. He did not require a loan until he decided to go into the mail route business. The debt was not "incurred primarily for a personal, family, household * * * purpose" as required by § 40–14–304, W.S.1977, supra. Although part of the proceeds of the loan were used to pay off that due on a second mortgage on appellants' residence, the testimony was that prudent lending practice would require such pay off with transfer of the collateral if the loan were made for the purpose of financing another enterprise. The thrust of all of the evidence was that the debt was "incurred *primarily*" for the purpose of entering a mail route business and not for a personal, family or household purpose. It was not a consumer loan.

Turning, then, to the issues as framed by appellants:

## DID THE JURY AND/OR THE TRIAL COURT ERR IN THE ASSESSMENT OF APPELLANTS' DAMAGES?

Appellants' argument relative to this issue is premised on the assumption that the loan was a consumer loan and that the amount of damages allowed by the jury was inconsistent therewith. Appellants consider themselves as the prevailing party in making this assumption and conclude that the jury award of some money carries with it the assumption that the jury found the loan to be a consumer loan. As noted, supra, appellants were not the prevailing party and the assumptions are to the contrary.

Appellants argue that the award of damages to them was inconsistent with a jury finding that the loan was not a consumer loan. Before appellate relief can be sought on this basis, the contentions must be brought to the attention of the trial court before the jury is discharged. Appellants did not do so. It is a well established

proposition in this state that any objection to a claimed inconsistency of a jury verdict must be objected to before the jury is discharged, so that the jury can be further instructed and can correct any deficiencies. *Crown Cork & Seal Company, Inc. v. Admiral Beverage Corp.,* Wyo., 638 P.2d 1272, 1274 (1982); *Pure Gas and Chemical Company v. Cook,* Wyo., 526 P.2d 986, 988–989 (1974); *Smith v. Blair,* Wyo., 521 P.2d 581 (1974); *DeWitty v. Decker,* Wyo., 383 P.2d 734, 738–740 (1963).

As we said in *DeWitty,* at 739–740:

"* * * [W]e do not think it harsh or unreasonable to require a litigant, when an opportunity is afforded during the trial, timely to bring a matter such as here to the attention of the trial court in order that it might be corrected, and failing in this that he shall not be heard here to complain. To hold otherwise would seem unfair to the jury, to the trial court, and to the other litigants, to say nothing of the unnecessary loss of time and expense."

The inconsistency in the verdict, if there is one, could also have been attacked by appellees. They could contend that the award of any damages was improper in view of the obvious jury finding that the loan was not a consumer loan. They have not cross-appealed on that basis. Nor could they without first objecting when the verdict was returned, thus giving the trial court an opportunity to consider the issue.

## TO THE EXTENT APPELLANTS' DAMAGES MAY NOT BE MODIFIED AS A MATTER OF LAW, WERE THE DAMAGES AWARDED BY THE JURY INADEQUATE AS A RESULT OF PASSION, PREJUDICE, AND/OR CONFUSING AND MISLEADING INSTRUCTIONS BY THE TRIAL COURT?

In arguing this issue, appellants contend that evidence of an offer of compromise and statements made in compromise negotiations were erroneously admitted and that the jury instructions were needlessly complicated and confusing.

The contention relative to compromise evidence is directed to the testimony of Mr. Grebenar, an attorney for appellee Foothill Industrial Bank. As an element of appellants' case, they alleged that appellee Foothill Industrial Bank failed to refund an overcharge made on the loan within a reasonable time *after demand,* such being a violation of the U.C.C.C. which carries a substantial penalty.

◼ The trial court expressly limited Mr. Grebenar's testimony to the response made to the demand for refund of the overcharge. The testimony, as so limited, was admissible under Rule 408, W.R.E. Such rule reads:

"Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. *This rule does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay,* or proving an effort to obstruct a criminal investigation or prosecution." (Emphasis added.)

The emphasized portion of this rule is directly on point in support of the trial court's ruling.

Any prejudice which appellants may complain of was the result of exhibits offered by appellants themselves during cross-examination of Mr. Grebenar. Appellants offered letters exchanged between the parties, which were part of the actual settlement negotiations. Appellees, on direct examination, did not enter the realm of the negotiations. That was done by appellants on cross-examination. Appellants cannot now complain of something which they themselves introduced at trial. "[A]ppellant cannot predicate error on its admission at his own behest and without objection by appellee," *Coulter, Inc. v. Allen,* Wyo., 624 P.2d 1199, 1202 (1981).

◼ With reference to appellants' contention that the jury instructions were needlessly complicated and confusing, such contention falls far short in meeting the requirement of Rule 51, W.R.C.P. As we said in *Pure Gas and Chemical Company v. Cook,* supra, 526 P.2d at 990, an objection to an instruction:

"'* * * as being superfluous and not adding anything to the statement of the law and tends toward confusion in the understanding of the instruction.'

"* * * is not one 'stating distinctly the matter to which he objects and the grounds of his objection,' Rule 51, W.R.C.P., and does not indicate 'with definiteness and particularity the error asserted,' *Texas Gulf Sulphur Company v. Robles,* Wyo., 511 P.2d 963, 968, and authorities cited; and in the absence of cited authorities or cogent argument we will not consider the same, *Joly v. Safeway Stores, Inc.,* Wyo., 502 P.2d 362, 365."

Appellants acknowledge that the instructions were in the language of the statutes and they do not contend such to be error. Omnia praesumuntur rite et solemniter esse acta donec probetur in contrarium (all things are presumed to have been rightly and duly performed until it is proved to the contrary). Appellants did not designate in what manner or form the instructions should have been given as an improvement upon the statutory language.

◼ In addition, appellants argue that the trial court erred in failing to use a special verdict form offered by appellants.

"* * * The submission or failure to submit a form of special verdict with answers to interrogatories is in the sound discretion of the trial judge. * * *" *Rissler & McMurry Company v. Atlantic Richfield Company,* Wyo., 559 P.2d 25, 30 (1977). And see *North Central Gas Company v. Bloem,* Wyo., 376 P.2d 382, 385 (1962).

"* * * We hold that the jury was adequately instructed, understood the issues

and acted upon the basis of substantial evidence." *Rissler,* supra, 559 P.2d at 31. It follows that no abuse of the discretion afforded the trial court in choosing not to utilize a special verdict form can be found under these circumstances.

### DID THE TRIAL COURT ERR AS A MATTER OF LAW AND/OR ABUSE ITS DISCRETION IN DENYING APPELLANTS' MOTIONS FOR ATTORNEY'S FEES AND COSTS, AND IN AWARDING TO APPELLEES THEIR COSTS AS A SETOFF AGAINST APPELLANTS' JUDGMENT?

Again, appellants' argument on this issue is premised upon the assumption that the loan was a consumer loan and not a commercial loan. The jury found to the contrary.

Rule 68, W.R.C.P., provides, in pertinent part:

" * * * If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer. * * * "

■ Prior to trial, appellees made a settlement offer of approximately $16,500.00. The judgment for appellants was for $2,032.36; this is considerably less than the amount of the offer of settlement. The trial court properly awarded costs to the appellees and denied them to appellants under Rule 68.

### DID THE TRIAL COURT ERR IN GRANTING APPELLEES' MOTION FOR DIRECTED VERDICT AS TO APPELLANTS' CAUSE OF ACTION IN DECEIT?

Consistently, appellants premise their argument on this issue on the incorrect presumption that the loan was a consumer loan and not a commercial loan. The fraud and deceit count of appellants' complaint is the only one which involves appellee Stevens, an employee of appellee Foothill Industrial Bank.

■ As we said in *Vassos v. Roussalis,* Wyo., 658 P.2d 1284, 1286 (1983), in reviewing the district court's decision to grant a directed verdict we will consider all the evidence favorable to the party against whom the motion is directed, together with all reasonable and legitimate inferences which may be drawn therefrom. Accord, *Carey v. Jackson,* Wyo., 603 P.2d 868, 877 (1979); *Town of Jackson v. Shaw,* Wyo., 569 P.2d 1246, 1250 (1977). When determining the question of sufficiency of the evidence on a motion for a directed verdict, we must, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, determine whether there can be but one conclusion as to the verdict that reasonable jurors could have reached. *Vassos v. Roussalis,* supra; *Carey v. Jackson,* supra; *Town of Jackson v. Shaw,* supra; *Barnes v. Fernandez,* Wyo., 526 P.2d 983, 985 (1974).

"In determining whether a verdict should have been directed, the appellate court applies the same standard as does the trial court in passing on the motion originally. * * * Whether a verdict should be directed is a question of law and on those questions litigants are entitled to full review by the appellate court without special deference to the views of the trial court." 9 Wright and Miller, Federal Practice and Procedure, Civil, § 2536, p. 595, and § 2524, pp. 541–542.

The elements in a cause of action of fraud are a false representation by a defendant which is relied upon by a plaintiff to his damage. *Johnson v. Soulis,* Wyo., 542 P.2d 867, 872 (1975); *Davis v. Schiess,* Wyo., 417 P.2d 19, 21 (1966). Further, the asserted false representation must be one which is made to induce action, and must be reasonably believed by the plaintiff to be true. *Johnson v. Soulis,* supra; *First National Bank v. Swan,* 3 Wyo. 356, 23 P. 743 (1890). Thus, in order for the appellant to prove a prima facie case of fraud and deceit, he must prove that the appellee made a material false representation, with intent to induce action on the part of appellant and which was reasonably relied upon by appellant to his detriment. *Schepps v. Howe,* Wyo., 665 P.2d 504 (1983).

Appellants allege that a prima facie case of fraud and deceit is shown by the overcharge upon the loan's prepayment, and by the decision of appellants to forego financing with Person-to-Person. But neither of these actions induced the appellants to take out the loan. The overcharge occurred when the loan was paid—not when it was incurred.

The testimony of appellant, Glen Anderson, was that at the time the loan was obtained, he had already quit his job and had ten days in which to begin the postal mail route. The personnel at Person-to-Person told appellant that it would take from ten days to three or four weeks to determine if the loan would be made, to process the loan application and to distribute the funds. Appellant Glen Anderson was then in the uncomfortable position of having already quit his job and was committed to another business, but needed a loan quickly in order to start up the business. He decided to forego the possibility of a loan with Person-to-Person. At this point in time, he had not discussed any of the terms of the loan with appellee Stevens. It is clear that appellants did not meet the burden of proof that the alleged misrepresentations were either material, or relied upon. By the time the terms of the loan were actually discussed, appellants were desperate for a loan, from anyone, to meet their mail contract. Appellants had already foregone the loan with Person-to-Person, and they were willing to take any loan that would allow monthly repayment in the amount of $500.00.

The directed verdict was proper.

Affirmed.