In the Matter of the PATERNITY OF SDM.

RKS, JR., Appellant (Defendant),

v.

SDM, by next friend TY, Appellee (Plaintiff).

No. C–93–5.

Supreme Court of Wyoming.

Oct. 10, 1994.

Robert B. Carroll, Cheyenne, for appellant.

Donald A. Cole of Cole & Cole, Cheyenne, for appellee TY.

Ronald E. Triggs, Cheyenne, Guardian ad Litem.

Before GOLDEN, C.J., and THOMAS, MACY and TAYLOR, JJ., and CARDINE, J.,* Retired.

THOMAS, Justice.

The essential issue in this case is whether a minor child is foreclosed by preclusive legal doctrines from an action to establish paternity. The action was commenced by the child's mother in the name of the child after the mother had stipulated to the dismissal with prejudice of an action to establish paternity filed by the mother and after a decree of divorce in which the child was declared the issue of the marriage of the mother and her husband. The putative father (RKS), relying upon the doctrines of *res judicata,* collateral estoppel, judicial estoppel, and laches, sought dismissal of the action. The district court ruled the child was not foreclosed from pursuing the paternity action; found RKS was the natural father; and ordered child support, payment and provision of certain costs, expenses, and additional benefits by RKS. We hold a minor child has a separate and independent cause of action to establish paternity under our statutes, and the child was not foreclosed from that action by the earlier proceedings because the child was not a party to them. The Decree of Paternity entered by the district court is affirmed.

* Retired July 6, 1994.

RKS in his Appellant's Opening Brief asserts the following issues:

I. Are parties to a paternity action and their privies prevented from relitigating paternity if the action is voluntarily dismissed before the informal hearing?

II. Can a child born during a marriage bring a paternity action after a divorce in which the child's mother and presumed father have declared the child to be born as issue of their marriage?

In the Brief of Appellees (the mother and the child, by her guardian *ad litem*), the issues are set forth in this way:

I. Does the Appellant's failure to affirmatively plead *res judicata*, his counterclaim for paternity and his subsequent motions to join mother and presumed father waive *res judicata?*

II. Whether the stipulation and order to dismiss with prejudice entered into by mother and putative father in the first paternity action preclude the current paternity action?

A. The stipulation and order dismissing with prejudice are void.

B. *Res judicata* does not apply to the minor child because she was not a party to the action.

III. Whether the minor child is precluded by *res judicata* or collateral estoppel from bringing a paternity action after a divorce wherein the child's mother and mother's husband stipulated that the child was born as issue of their marriage?

In his reply brief, RKS addresses the first issue articulated by the appellees, which he articulates in the identical language used by the appellees.

This case is the third action in which paternity of the child has been addressed. Prior to the birth of the child, the mother instituted a paternity action on June 29, 1989, alleging that RKS was the putative father. A guardian *ad litem* was appointed to represent the unborn child. RKS responded by

filing a Motion to Dismiss in which he alleged that the husband of the mother was the presumptive father of the child pursuant to Wyo.Stat. § 14–2–102(a)(i) (Cum.Supp. 1993).[1]

After the child was born on July 31, 1989, the mother executed an Affidavit for Dismissal of the paternity action in which she stated in part:

4. That I agree that my husband, [husband's name], is the natural father of the minor child.

5. That I agree that [putative father's name] is not the natural father of said minor child.

The attorneys for the parties then signed a Stipulated Motion for Dismissal. The guardian *ad litem* previously appointed for the child did not receive notice of the stipulation and did not participate in the dismissal action nor object to the dismissal. On August 14, 1989, the court entered an Order of Dismissal of that first action with prejudice. No appeal was taken from that ruling.

In the second action relating to the child, the mother sought a divorce from her husband (the presumptive father) by a complaint filed November 21, 1989. The case was set for default hearing on January 30, 1990. The mother then filed a Motion to Set Aside Setting in which she asserted, "[t]hat there has arisen a substantial question of fact as to the biological paternity of the infant child born as issue of this marriage." In response to that motion, the court entered an order in which it set aside the default trial until biological paternity was determined, but no further action was taken to establish paternity. Subsequently, the mother, in an Affidavit for Divorce, and the mother and husband, in a Property Settlement Agreement, stated one child had been born as issue of the marriage, naming the child born on July 31, 1989. On April 27, 1990, a Decree of Divorce was entered stating the child was the issue of the marriage. The mother was awarded custody

---

1. Wyo.Stat. § 14–2–102(a)(i) (Cum.Supp.1993) provides:

 (a) A man is presumed to be the natural father of a child if:

 (i) He and the child's natural mother are or have been married to each other and the child

is born during the marriage, or within three hundred (300) days after the marriage is terminated by death, annulment or divorce or after a decree of separation is entered by a court * * *.

of the child, and the husband was granted visitation rights and ordered to pay child support. No appeal was taken from the divorce decree.

This action to establish paternity was filed on October 15, 1990 by the child acting by and through her next best friend, her mother, alleging that RKS was the natural father. In responding to this action, RKS argued, among other things, that paternity had been adjudicated by the court in two prior proceedings, and those determinations were *res judicata* in this action. The district court, however, adopted the Report of the District Court Commissioner and found the child had not been a party to either the first paternity action or the divorce action. RKS then joined both the mother and the presumptive father as parties in this case. Subsequently, the court ordered genetic testing of the four parties and appointed a guardian *ad litem* for the child. The result of the genetic testing demonstrated the presumptive father, the ex-husband, was excluded as the child's biological father. The same tests indicated RKS was the biological father at a probability level of 99.17%. RKS has appealed the ruling of the district court supporting the right of the child to pursue this paternity action.

 RKS did not raise the doctrines of *res judicata*, collateral estoppel, judicial estoppel or laches as affirmative defenses in his Answer and Counterclaim in this case. In pertinent part, Wyo.R.Civ.P. 8(c) provides:

> *Affirmative defenses.*—In pleading to a preceding pleading, a party shall set forth affirmatively * * * estoppel, * * * laches, * * * res judicata, * * * and any other matter constituting an avoidance or affirmative defense.

In *Bredthauer v. TSP*, 864 P.2d 442, 446 (Wyo.1993), we said:

> We strongly adhere to the rule forbidding us to "consider for the first time on appeal issues that were neither raised in, nor argued to, the trial court," except for those issues which are jurisdictional or are fundamental in nature. *Oatts v. Jorgenson*, 821 P.2d 108, 111 (Wyo.1991).

While RKS did not raise his affirmative defenses in his pleading, the issues were argued to the court. Consequently, the pleading may be considered as having been amended pursuant to Wyo.R.Civ.P. 15(b). We also perceive that the question of whether a minor child has a separate and distinct cause of action to establish paternity in the absence of a child having been joined as a party in proceedings instituted by the mother or the putative father is fundamental in nature. We proceed to decide that issue.

The doctrines of *res judicata* and collateral estoppel are historic features of the law in Wyoming. In *Delgue v. Curutchet*, 677 P.2d 208, 213–14 (Wyo.1984), we said:

> In this jurisdiction the doctrine of res judicata and the related doctrine of collateral estoppel have been recognized in a number of decisions over the years. *Barrett v. Town of Guernsey*, Wyo., 652 P.2d 395 (1982); *Roush v. Roush*, Wyo., 589 P.2d 841 (1979); *Bard Ranch Company v. Weber*, Wyo., 557 P.2d 722 (1976); *Blount v. City of Laramie*, Wyo., 510 P.2d 294 (1973); *Knight v. Boner*, Wyo., 459 P.2d 205 (1969); *Rubeling v. Rubeling*, Wyo., 406 P.2d 283 (1965); *Lee v. Brown*, Wyo., 357 P.2d 1106 (1960); *Willis v. Willis*, 48 Wyo. 403, 49 P.2d 670 (1935), *reh. denied* 49 Wyo. 296, 54 P.2d 814 (1936); and *Cook v. Elmore*, 27 Wyo. 163, 192 P. 824 (1920). *See also Price v. Bonnifield*, 2 Wyo. 80 (1878). As recognized in this state, these doctrines incorporate a universal precept of common-law jurisprudence to the effect that a "right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties or their privies." *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979), quoting from *Southern Pacific R. Co. v. United States*, 168 U.S. 1, 48–49, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897). These doctrines are founded upon the interest held by society in having differences conclusively resolved in a single action thereby avoiding the vexation and expense which are associated with piecemeal litigation. The necessity for sustaining this social interest is the justification for the doctrines of *res judica-*

ta and collateral estoppel. *Montana v. United States, supra,* 440 U.S. at 153–154, 99 S.Ct. at 973–74; *Barrett v. Town of Guernsey, supra,* 652 P.2d at 398–399; and *Rubeling v. Rubeling, supra,* 406 P.2d at 284. These doctrines, which inhibit the relitigation of claims or issues upon which there has been a full and fair opportunity to litigate in a court of competent jurisdiction, promote the reliance by citizens of the state upon courts to settle their disputes and they conserve judicial resources.

The interest served by both doctrines is essentially the same, but courts, including this court, have been careful to distinguish between the two. *Res judicata* can be described generally as that rule which precludes the presentation by parties or those in privity with them of the same claim that was resolved by an earlier judgment. *Cromwell v. County of Sac,* 94 U.S. 351, 24 L.Ed. 195 (1877); *Bard Ranch Company v. Weber, supra,* 557 P.2d at 727; *Willis v. Willis, supra,* 49 P.2d at 673; and Restatement (Second) of Judgments, § 17 (1982). The effect of collateral estoppel is that of preventing relitigation of issues which were involved actually and necessarily in the prior action between the same parties. *Roush v. Roush, supra,* 589 P.2d at 843; *Bard Ranch Company v. Weber, supra,* 557 P.2d at 726–727; *Willis v. Willis, supra,* 49 P.2d at 673–677; and Restatement (Second) of Judgments, § 27 (1982).

These doctrines have been invoked in paternity proceedings. *Matter of Paternity of JRW,* 814 P.2d 1256 (Wyo.1991); *CLS v. CLJ,* 693 P.2d 774 (Wyo.1985). In *JRW,* 814 P.2d at 1264–65, we noted policy justifications in addition to those referred to in *Delgue,* saying:

Additional justification for the doctrines of *res judicata* and collateral estoppel includes: prevention of inconsistent decisions (*Allen v. McCurry,* 449 U.S. 90, 94–96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980)); the concept that each party shall be limited to one opportunity to try his

case on the merits (*see CLS v. CLJ,* 693 P.2d 774, 776 (Wyo.1985)); and preventing the legal system from becoming unmanageable (*Manners v. Manners,* 706 P.2d 671, 674–75 (Wyo.1985)). As the United States Supreme Court has said, " '[the] doctrine of *res judicata* is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, "of public policy and of private peace," which should be cordially regarded and enforced by the courts * * *.' " *Federated Dept. Stores, Inc. v. Moitie,* 452 U.S. 394, 401, 101 S.Ct. 2424, 2429, 69 L.Ed.2d 103 (1981) (quoting *Hart Steel Co. v. Railroad Supply Co.,* 244 U.S. 294, 299, 37 S.Ct. 506, 508, 61 L.Ed. 1148 (1917)).

The four criteria for the application of *res judicata* were identified in *JRW,* 814 P.2d at 1265 by this language:

They are: " '(1) the parties were identical; (2) the subject matter was identical; (3) the issues were the same and related to the subject matter; and (4) the capacities of the persons were identical in reference to both the subject matter and the issues between them.' "

The doctrines of *res judicata* and collateral estoppel are very similar but, as noted in *Delgue, res judicata* is claim preclusion, while collateral estoppel is issue preclusion. Certainly, these two doctrines share the requirement that the parties are identical or the current parties are in privity with the parties in the prior action.

It is clear the child was neither a party to the initial paternity action nor a party to the divorce. Consequently, the doctrines of *res judicata* or collateral estoppel may only be invoked in this instance if the child can be found to have been in privity with the mother in the prior paternity suit or with the mother or the presumptive father in the divorce case.

■ The issue of privity is resolved by our statutes relating to parentage. Wyo.Stat. § 14–2–104 (1990)[2] recognizes an indepen-

---

2. Wyo Stat. § 14–2–104 (1990), at the time this action was instituted provided, in pertinent part:

(a) A child, his natural mother or a man presumed to be his father under W.S. 14–2–102(a)(i), (ii) or (iii) may bring action:
* * * * * *

dent action by the child. The joinder of the paternity action with "an action for divorce, annulment, separate maintenance, support or any action affecting the parent and child relationship" is specifically authorized. Wyo. Stat. § 14–2–106 (1986). The first sentence of Wyo.Stat. § 14–2–107 (1986) most significantly provides that "[t]he child shall be made a party to the action." Because this statutory requirement was ignored, the child in this case was not joined as a party in either prior action. Since the child could have been made a party and the statute clearly recognizes a separate action by the child, we conclude there was no privity between the mother and the child for purposes of the paternity issue in either of the prior actions. For the same reason, no privity with the presumptive father exists in the divorce case.

With respect to the argument pressed by RKS that *res judicata* attaches to the dismissal of the first paternity action pursuant to Wyo.R.Civ.P. 41(a) and 12(b) (these rules were in effect on October 15, 1990 when the instant case was filed) [3], a Florida court has addressed that issue. In a case involving similar facts, the Florida Court of Appeals concluded that the trial court erred in barring the action of the child under the doctrine of *res judicata* on the rationale that dismissal with prejudice of the mother's earlier action against the putative father achieved that result. The court ruled neither the state nor the child were involved in the mother's prior action and, for that reason, *res judicata* could not be invoked to foreclose the right of the child or the subrogated right of the state to bring the action. *Dep't of Health and Rehabilitative Services, on behalf of Ward v. Wyatt*, 475 So.2d 1332 (Fla.Dist.Ct. App.1985). That result is sound and clearly indicates there would be no justification for asserting *res judicata* because of privity between the putative father and the child. Even though the child in our case had an

(ii) For the purpose of declaring the nonexistence of the father and child relationship presumed under W.S. 14–2–102(a)(i), (ii) or (iii) only if the action is brought within a reasonable time after obtaining knowledge of relevant facts, but in no event later than five (5) years after the child's birth. After the presumption has been rebutted, paternity of the child by another man may be determined in the same action if he has been made a party.

\* \* \* \* \* \*

(c) An action to determine the existence of the father and child relationship with respect to a child who has no presumed father under W.S. 14–2–102 may be brought within the time specified under W.S. 14–2–105(a) by the child, the department of health and social services, the mother or personal representative of the child, the personal representative or a parent of the mother if the mother has died or is a minor, a man alleged or alleging himself to be the father, or the personal representative or a parent of the alleged father if the alleged father has died or is a minor.

(d) Regardless of its terms, an agreement, other than an agreement approved by the court in accordance with W.S. 14–2–111(b), between an alleged or presumed father and the mother or child does not bar an action under this section.

(e) If an action under this section is brought before the birth of the child, all proceedings shall be stayed until after the birth except service of process and the taking of depositions to perpetuate testimony.

3. Wyo.R.Civ.P. 41 provides, in pertinent part:

(a) *Voluntary dismissal; effect thereof.*

(1) By Plaintiff; By Stipulation.—Subject to the provisions of Rule 23(c), of Rule 66, and of any statute, an action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs, or (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court an action in which service was obtained based on or including the same claim.

(2) By Order of Court.—Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. \* \* \* Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

Wyo.R.Civ.P. 12(b) provides, in pertinent part:

*How presented.*—Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: \* \* \* (6) failure to state a claim upon which relief can be granted, \* \* \*.

appointed guardian *ad litem,* the guardian *ad litem* took no part in the dismissal of the prior action and, we emphasize, the child was not joined as a party as the statute requires.

In *Matter of TLB,* 771 P.2d 811, 813 (Wyo. 1989), we said that the provisions of the Wyoming statute, which is substantially the Uniform Parentage Act, are in "derogation of the common law, must be strictly construed and carefully adhered to." In that case, the decree of paternity and order for custody and support were held void because the child was not made a party to the action, nor was a guardian *ad litem* appointed to represent the child's best interests. This inhibited the child from having any role in the proceeding or in the negotiation of an agreement between the parties. Furthermore, the agreement was not a product of the required informal hearing or the recommendation of the court. The first paternity action in this case is quite similar to *TLB,* and we hold the child is not precluded from bringing this action.

■ In a separate argument, RKS asserts the divorce decree involving the mother and the presumptive father resulted in a final adjudication of the issue of paternity of the child and that case justifies the invocation of the doctrines of *res judicata,* collateral estoppel, judicial estoppel, and laches. Our examination of the record discloses that, while issues of custody and support were decided, the paternity of the child was not at issue in the divorce action. Paternity was not raised in the allegations of the complaint; the child was not served; did not appear; and was not represented by a guardian *ad litem* in the divorce case. Since the child was not a party in that case involving her mother and the presumptive father, she cannot be bound by the decree of divorce. *Devereaux v. Devereaux,* 144 Colo. 31, 354 P.2d 1015, 1016 (1960).[4]

In *Devereaux,* the Colorado Supreme Court ruled that parentage of a child is not an issue in a divorce or annulment action between the parties. *See also Shatford v. Shatford,* 214 Ark. 612, 217 S.W.2d 917 (1949) (holding the child was not bound by an action

for paternity or legitimacy rendered in an annulment proceeding because he was not a party to the action); *Daniels v. Daniels,* 143 Cal.App.2d 430, 300 P.2d 335 (1956) (holding any ruling upon the issue of paternity made in a divorce action would not bind the child nor affect the child's right to compel support from a husband if he is the child's father); *Adamson v. Adamson,* 209 Cal.App.2d 492, 26 Cal.Rptr. 236 (1962) (holding paternity in an interlocutory divorce decree was not *res judicata* as against the children whose paternity was litigated in the divorce proceeding); *Beckwith v. Beckwith,* 355 A.2d 537 (D.C.Ct. App.1976), *cert. denied,* 436 U.S. 907, 98 S.Ct. 2239, 56 L.Ed.2d 405 (1978) (holding a child who was not a party to a divorce proceeding was not bound by a decision as to his legitimacy or illegitimacy); *Buzzell v. Buzzell,* 235 A.2d 828 (Me.1967) (holding paternity determination reached in an annulment or divorce proceeding was not binding on the child in any later action brought by the child or in his behalf involving his legitimacy or rights of inheritance because the child was not a party to the proceeding resulting in the determination of paternity); *In O__ F__ L__ v. M__ R__ R__, 518 S.W.2d 113 (Mo.Ct.App.1974) (holding the weight of authority supports the view that a child is not bound by a finding of nonpaternity in a divorce or annulment action to which he was not a party). We hold that the doctrines of* res judicata *and collateral estoppel cannot be applied to the child in this action even though statements by the mother and the presumptive father regarding the parentage of the child are included within the divorce action.*

■ In addition to our ruling that the child cannot be bound by the doctrines of *res judicata* or collateral estoppel because the child was not a party, we note the issue of paternity was not resolved in *Devereaux.* As we have noted, the doctrine of collateral estoppel results in issue preclusion. Conceptually, collateral estoppel could be invoked (*JRW,* 814 P.2d 1256), but the simple fact that the issues of custody and support were necessarily decided in the divorce action does

---

4. *See also* Donald M. Zupanec, Annotation, *Effect, in Subsequent Proceedings, of Paternity Findings or Implications in Divorce or Annulment* *Decree or in Support or Custody Order Made Incidental Thereto,* 78 A.L.R.3d 846 (1977).

not demonstrate paternity was at issue or was decided. Furthermore, since the child was not represented through a guardian *ad litem* nor made a party, the child had no full and fair opportunity to litigate paternity at that time.

■ RKS also asserts the preclusive doctrine of judicial estoppel. We have continually expressed our concern about the invocation of inconsistent positions by parties in judicial proceedings. In *Bredthauer*, 864 P.2d at 445, we said:

> This court has, on several occasions, invoked the doctrine of judicial estoppel. *Matter of Paternity of JRW*, 814 P.2d 1256, 1265–66 (Wyo.1991); *Zwemer v. Production Credit Ass'n*, 792 P.2d 245, 246 (Wyo.1990); *Anderson v. Sno–King Village Ass'n, Inc.*, 745 P.2d 540, 545 (Wyo. 1987); *Texas West Oil & Gas Corp. v. First Interstate Bank*, 743 P.2d 857, 866 (Wyo.1987); *Matter of Parental Rights of ARW*, 716 P.2d 353, 356 (Wyo.1986); *Snell v. Ruppert*, 582 P.2d 916, 918 (Wyo.1978); *Gray v. Fitzhugh*, 576 P.2d 88, 91 (Wyo. 1978); *Allen v. Allen*, 550 P.2d 1137, 1142 (Wyo.1976); *Hatten Realty Co. v. Baylies*, 42 Wyo. 69, 89–93, 290 P. 561, 566–68 (1930). In *Hatten*, this court held that where "a man is successful in the position taken in the first proceeding" then that position "rise[s] to the dignity of conclusiveness." *Hatten*, 42 Wyo. at 93, 290 P. at 568.

> In *Allen*, we described judicial estoppel as

> a doctrine which estops a party to play fast and loose with the courts or to trifle with judicial proceedings. It is an expression of the maxim that one cannot blow hot and cold in the same breath. A party will just not be allowed to maintain inconsistent positions in judicial proceedings * * *.

> *Allen*, 550 P.2d at 1142. In *JRW*, we stated that under the doctrine of judicial estoppel:

> "[A] party who by his pleadings, statements or contentions, under oath, has assumed a particular position in a judicial proceeding is estopped to assume an

inconsistent position in a subsequent action."

*JRW*, 814 P.2d at 1265–66 (*quoting* Black's Law Dictionary 761 (5th ed. 1979)). In addition to the requirement of inconsistent positions, most courts also require that the "initial position taken must be one regarding fact." In other words, judicial estoppel does not apply to legal conclusions based on undisputed facts. Rand G. Boyers, *Comment, Precluding Inconsistent Statements: The Doctrine of Judicial Estoppel*, 80 NW.U.L.Rev. 1244, 1262 (1986); *see also* 31 C.J.S. *Estoppel* § 117b at 627 (1964).

In our case, the mother, the presumptive father, and RKS all permitted the court in the two prior cases to base an order and a decree on fraud and collusion. The mother and the presumptive father testified in their affidavits that they both knew the child was not their biological child at the time she was born. They both testified it was physically impossible for the presumptive father to be the sire of a child. The mother said that, when she signed the Affidavit for Dismissal in the first paternity action declaring the presumptive father to be the natural father, she had been cohabiting at the time of conception with RKS and engaging in sexual intercourse daily. Furthermore, the mother and RKS both knew he had claimed paternity of the child and was happy about her anticipated birth. These parties, in the previous actions, clearly were playing fast and loose with the courts.

In *JRW*, 814 P.2d at 1265–66 (emphasis added) we adopted this definition for judicial estoppel:

> As defined in Black's Law Dictionary 761 (5th ed. 1979), judicial estoppel binds a party by his judicial declarations and he

> > may not contradict them in a subsequent proceeding involving [the] same issues and **parties**. * * * Under this doctrine, a **party** who by his pleadings, statements or contentions, under oath, has assumed a particular position in a judicial proceeding is estopped to assume an inconsistent position in a subsequent action. (Emphasis added).

In *Henley v. Foster,* 220 Ala. 420, 125 So. 662 (1930), the Supreme Court of Alabama held that a decree annulling a marriage based on fraud and collusion between the parties did not bind the child of the wife to the determination of the child's illegitimacy that necessarily flowed from the annulment decree. Since it is clear in our case that the child was not a party to any prior judicial proceeding, judicial estoppel cannot inhibit her action to determine her paternity.

■ The father's final argument is that this action is barred by laches. Looking to Wyo.Stat. § 14–2–104(a) (Cum.Supp.1990), the father contends that this action was not brought within a reasonable time after learning the facts regarding paternity. "Determination of what constitutes 'reasonable time' is a question of fact for the trial court." *JRW,* 814 P.2d at 1263. We cannot discern from this record that the affirmative defense of laches was before the trial court for its consideration. RKS well may have waived his right to have the issue decided by the trial court but, even if we should conclude it was argued and, therefore, before the court, we can find nothing that would persuade a trier of fact this action was not brought within a reasonable time.

We do have a strong public policy that favors the presumption of legitimacy to avoid disruption of family relationships. We also maintain the entitlement of the child by statute to the rights of care, education, and maintenance. Balancing the equities in this situation, the innocent child's interest must weigh heavily in the balance. As we said, in *Moore v. Moore,* 231 Or. 302, 372 P.2d 981, 983 (1962) (emphasis added), "[i]n these proceedings [paternity determinations] the criterion for judgment is the child's welfare and not the fault of the parent." *Moore* was followed and quoted in *CSP v. DDC,* 842 P.2d 528, 533 (Wyo.1992). The child in this case is entitled to the determination of her paternity in accordance with the correct facts. Those include the fact the mother and the presumed father were not living together at the time of her conception. Their marriage had ended emotionally, even though not legally, prior to the time of her conception. The mother was involved in a sexual relationship with RKS, and there is no danger of disrupting a family unit because that had occurred long ago. The child is entitled to support and the other benefits of a parent-child relationship from her biological parents.

While the recognition of the independent right of the child to bring an action to establish paternity despite a contrary conclusion in an earlier divorce may be somewhat troublesome, we do not anticipate any flood of litigation after custody and support have been determined in a prior divorce case. The parties can control that hazard and, if there is any question about paternity, it is easy to make the child a party to the divorce case and to achieve representation by guardian *ad litem.* We do intend to afford significant weight to the rights of the child.

In summary, we hold that a child who has not been included as a party in any prior paternity case nor any prior divorce action cannot be foreclosed by the doctrines of *res judicata,* collateral estoppel, or judicial estoppel with respect to the child's subsequent effort to achieve determination of paternity. Neither is laches available as a defense in this case.

The decision of the district court is affirmed in all respects.